**In re the Application of Pat REECE and Jerry Reece, Appellants,**

v.

**John Robert REECE, Respondent.**

**No. WD 48776.**

Missouri Court of Appeals, Western District.

Jan. 10, 1995.

John R. Shank, Jr., Kansas City, for appellants.

Lawrence W. Ferguson, Columbia, for respondent.

Before KENNEDY, P.J., and BRECKENRIDGE and SPINDEN, JJ.

BRECKENRIDGE, Judge.

Jerry and Pat Reece appeal the trial court's dismissal of their application for guardianship of Brandon Reece, their thirteen-year-old mentally handicapped nephew. On appeal, Jerry and Pat Reece raise four points. They allege (1) that the trial court misapplied Missouri law by ruling that the best interests of Brandon could not be considered in determining whether to grant their application for guardianship; (2) that the trial court erred in sustaining the motion requesting dismissal of their application for guardianship filed by John Robert Reece (Bob), Brandon's father, because Bob had failed to fulfill his duties as natural guardian by relying on others to care for his son; (3)

that the trial court erred in denying Jerry and Pat's guardianship application because, as a matter of law, Brandon's natural father was unfit, unwilling and unable to fulfill his guardianship duties, and because, as a matter of law, the best interests of Brandon warranted the grant of guardianship to Jerry and Pat; and (4) that improper venue resulted from the transfer of the case from Clay County to Cooper County. The order of the trial court dismissing the petition for appointment of guardian is reversed and remanded.

Approximately two weeks after his birth, Brandon and his parents, Bob and Julie Reece, were involved in a car accident. As a result of the collision, Julie was killed and Brandon was injured. Brandon's injuries caused severe, permanent mental and physical disabilities. Due to brain damage, Brandon's functional age is below the one-year level. Brandon is prone to daily seizures, suffers from a variety of respiratory problems and is unable to communicate verbally or walk without assistance. In addition, Brandon's vision is impaired, and he is required to take a variety of medications.

After the accident, Bob claimed that he was unable to care for Brandon. When Brandon was nine months old, Bob voluntarily placed him in the physical custody of Jerry and Pat Reece, Brandon's uncle and aunt. Jerry and Pat have continuously raised Brandon from that point forward. Bob testified that, after February 2, 1985, when he married his present wife, Ila, he would have been able to care for Brandon, but he declined to do so. Bob also indicated that he and Ila normally visited Brandon's home three to four times a year. Prior to the filing of this petition, however, Bob had not seen Brandon for at least one year and had not visited Brandon's home in as much as three years.

On February 16, 1993, Jerry and Pat filed an application in the Circuit Court of Clay County to acquire guardianship over Brandon. Shortly thereafter, on March 12, 1993, Brandon's father filed his own application for guardianship. In addition, Bob filed a motion to change venue from Clay County, where Brandon lives with Jerry and Pat, to Cooper County, where Brandon's conserva-

torship is pending and Bob resides. Bob's motion was sustained by the trial court.

At the evidentiary hearing in the Cooper County Circuit Court, Probate Division, the trial court found that Bob was not a "loving father," and that it would be "extremely cruel to remove this child from [Jerry and Pat] ..., especially at this late date in this child's life." The judge also stated that he did not think one could find better care than what Brandon is receiving through Jerry and Pat. Nonetheless, the court sustained Bob's oral motion to dismiss the application at the close of the movant's evidence, because the court claimed it was without the statutory authority to grant Jerry and Pat's guardianship application.

■ In a court-tried case, "a motion to dismiss filed at the close of a plaintiff's case is treated 'as a submission on the merits, requiring the court to determine credibility of the witnesses and to weigh the evidence.'" *Pasta House Co. v. Williams,* 833 S.W.2d 460, 461 (Mo.App.1992) (quoting *Wyrozynski v. Nichols,* 752 S.W.2d 433, 436–37 (Mo.App. 1988)). Consequently, the evidence is viewed in the light most favorable to the judgment, *id.,* provided the court has not made specific findings of fact to the contrary. Rule 73.01(a)(3). The lower court's judgment is sustained unless it is unsupported by substantial evidence, is against the weight of the evidence or erroneously applies or declares the law. *Pasta House,* 833 S.W.2d at 461. This court holds that the lower court's order reflects a reversible misapplication of law.

Because the issues raised in Jerry and Pat's point two is dispositive of the case, this court will not address their remaining contentions, except those likely to arise on remand.

In point two, the crux of Jerry and Pat's claim of error is that the trial court misapplied the law when it dismissed their application for appointment as Brandon's guardians pursuant to § 475.030.4(2), RSMo 1986.[1] Section 475.030.4(2) authorizes the granting of letters of guardianship for a minor "[w]here the parents or the sole surviving parent of a minor are unwilling, unable or adjudged unfit to assume the duties of guardianship." Jerry and Pat claim that the trial court erroneously applied the law when it determined that Bob had fulfilled his duties as natural guardian by merely placing Brandon in the home of his aunt and uncle.

The appointment of a guardian for a minor child is governed by three statutes, §§ 475.025, 475.030 and 475.045. Section 475.025 provides that the father and mother, or survivor, are natural guardians who have the custody and care of the person of their child, as well as responsibility for the child's education. As indicated previously, under § 475.030, letters of guardianship may issue for a minor child when the child has no parent living, has parents who are unwilling, unable or unfit to assume the duties of guardianship or has parents whose parental rights have been terminated. Section ·475.045 states that the parent or parents of a minor have first priority to be appointed guardian or conservator of the minor, except as provided in § 475.030. Section 475.045 is seemingly in conflict with the other two statutes because there is no need to grant parents priority for appointment as guardians since no guardian is to be appointed so long at least one parent is fulfilling the duties of a natural guardian.

■ "The primary rule of statutory construction is to ascertain the intent of the lawmakers from the language used, to give effect to that intent if possible, and to consider words used in the statute in their plain and ordinary meaning." *Metro Auto Auction v. Director of Revenue,* 707 S.W.2d 397, 401 (Mo. banc 1986) (quoting *Blue Springs Bowl v. Spradling,* 551 S.W.2d 596, 598 (Mo. banc 1977)). When a statute is clear and unambiguous, courts are bound by the statute's manifest language. *Wolff Shoe Co. v. Director of Revenue,* 762 S.W.2d 29, 31 (Mo. banc 1988). "Courts, however, look beyond the plain and ordinary meaning of the statute when its meaning is ambiguous or will lead to an illogical result which defeats the intent of the legislature." *Kansas City Star Co. v. Fulson,* 859 S.W.2d 934, 938 (Mo.App.1993). Statutes are considered in *pari materia*

---

1. Unless otherwise indicated, all statutory references are found in RSMo 1986.

when they relate to the same matter or subject. *State ex rel. Rothermich v. Gallagher,* 816 S.W.2d 194, 200 (Mo. banc 1991). The rule of construction in such instances proceeds upon the supposition that the statutes in question are intended to be read consistently and harmoniously in their several parts and provisions. *Id.*

■ When reading the three statutes in *pari materia,* letters of guardianship for a minor should not issue unless there is no parent available, willing or able to fulfill the parental role in caring for a child and providing for that child's needs as natural guardian. It is only when no natural guardian is fulfilling the parental duties and obligations is the appointment of a statutory guardian necessary. Considering this statutory framework, we address whether the trial court misapplied the law in finding that Bob was not unwilling, unable and unfit to discharge his required duties as natural guardian of Brandon.

■ Bob's obligations and responsibilities to care for Brandon, as his sole parent and natural guardian, are much greater than the statutory duties of a court-appointed guardian. Under § 475.025, parents have "the custody and care of their [children's] persons and education." Case law and other statutes define what rights and obligations a parent with "custody and care" assumes. *See* 5B John A. Borron, Jr., *Missouri Practice: Probate Law and Practice* §§ 1836–1840, 1847–1848 at 127–140, 151–54 (2d ed. 1992). The scope of Bob's parental responsibilities, however, includes some duties which are comparable to those of a statutory guardian. A statutory guardian must provide for a ward's "education, support and maintenance" pursuant to § 475.120.1.

■ One distinction between a natural guardian and a statutory guardian is that a parent's duty to provide for a child is a personal obligation which cannot be satisfied when, by chance, another provides that service in the parent's stead. For example, when parents are tried for criminal non-support of their children, "[t]he fact the minor child does not suffer deprivation of necessary food, clothing, lodging, medical or sur-

gical attention, *or that such needs are being supplied by another,* does not abrogate the parent's obligation under the statute." *State v. Morovitz,* 867 S.W.2d 506, 508 (Mo. banc 1993) (emphasis added). Likewise, under the law of parental abandonment, it would be unfathomable if "a parent could have absolutely no contact with his child, spend no money on the cost of raising his child, and take no responsibility for rearing his child and yet still not abandon his child because he first asked someone else to take care of the child." *H.D. v. E.D.,* 629 S.W.2d 655, 658 (Mo.App.1982). *See also In Interest of M.B.A.,* 709 S.W.2d 941, 947 (Mo.App.1986) ("The fact that support was supplied from another source does not obliterate [the parent's] duty" of support in an action for termination of parental rights.); *In Interest of Y.M.H.,* 817 S.W.2d 279, 284 (Mo.App.1991) (When a mother leaves her child with a relative, contributes no "provision of support" and does not "communicate with or visit her daughter," the duty of support is not met.).

■ This is not to say that a parent cannot arrange for another to provide care and education for a child or that all care must be provided *personally* by a parent. Section 475.024, which permits a parent to execute a power of attorney delegating the parent's powers regarding care and custody, indicates otherwise. Section 475.024, however, does not speak to the legal consequences of totally relinquishing the care and custody of a child to another, without just cause, for a period of years. One consequence may be the finding by a court, in a proceeding for the appointment of a guardian for a minor child, that the parent has exhibited an unwillingness, inability or unfitness to assume the parent's duties as natural guardian for the child.

In the case at bar, the lower court held that:

> [T]he facts of [Jerry and Pat's] case don't show by clear and convincing evidence that the natural father has not provided for the education, support, and maintenance of [Brandon]. On the contrary, the facts show that he has provided the same by letting this child live with Jerry and Pat Reece.

The father has thus performed his duty as guardian. I did not say he has performed his duty as a father but merely as a guardian.

The court reasoned that, since Bob had left Brandon with his uncle and aunt, he had indirectly provided for Brandon's education, support and maintenance, and, therefore, the court was compelled by law to find that Bob was not unwilling, unable or unfit to serve as Brandon's natural guardian. We find this analysis, upon which the dismissal was based, to be a misapplication of the law.

■ To satisfy his obligations as natural guardian, Bob must have done more than place the custody of Brandon with Jerry and Pat twelve years ago. Pursuant to § 475.025, Bob must actively furnish Brandon with the care he requires. In the case of a disabled child such as Brandon, Bob's duty to provide for "care" would include provision for the child's medical and health needs. *See Tribune Pub. Co. v. Curators of Univ. of Mo.*, 661 S.W.2d 575, 583 (Mo.App.1983) (holding that courts should not construe statutes so that they create an unreasonable, oppressive or absurd result). Bob also is charged under § 475.025 to provide for Brandon's educational needs. Finally, Bob has a parental duty to "support" Brandon, *see Fower v. Fower Estate*, 448 S.W.2d 585, 586 (Mo.1970), and the manner in which Bob has provided for Brandon's support personally and as his court-appointed conservator is relevant. Bob's statements as to his present intention to assume Brandon's care and custody are not conclusive. The court should consider Bob's conduct over the past twelve years as evidence of his willingness, ability and fitness to fulfill his duties as natural guardian.

■ Bob relies on *Black v. Black*, 824 S.W.2d 514 (Mo.App.1992), in arguing that his neglect of Brandon is not reason to find him unwilling, unable or unfit to be Brandon's natural guardian. *Black* upheld the dismissal of a grandmother's petition requesting her appointment as guardian of her minor grandson because the petition did not allege the unfitness of the child's mother to

assume the duties of guardianship, but instead alleged her unfitness as a parent. *Id.* at 515. This court in so holding stated that "the only statutory unfitness standard is related to the fitness of a parent to act as guardian. There is no statutory ground for appointment of a guardian because of a parent's neglect of a child." *Id.* Clearly, however, evidence of neglect can demonstrate a parent's unfitness to serve as guardian, provided the neglect relates to the parent's duties as natural guardian. *See id.* Jerry and Pat properly pled that Bob was not fit, willing or able to act as natural guardian for Brandon. *Black* is not controlling.

■ Moreover, the trial court misapplied the law in determining the statute upon which to base Bob's ability to act as Brandon's guardian. Section 475.045.2 provides that the unfitness of a parent for the duties of guardianship or conservatorship of a minor "may be adjudged by the court after due notice and hearing." Rather than proceed under this section, however, the trial court utilized § 475.110, which addresses the general grounds for removal of a guardian or conservator.[2] In so doing, the trial court was in error. The determination of a parent's fitness as natural guardian is governed by § 475.045.2, rather than § 475.110, in that when several statutes address a particular subject, the most specific statutes supersedes the more general statute. *Kansas City Star*, 859 S.W.2d at 942. Section 475.045.2 more specifically applies to the issue of unfitness of a natural guardian than § 475.110, the general statute authorizing the removal of guardians and conservators.

■ Accordingly, Jerry and Pat's application for guardianship over Brandon should not have been dismissed. Point two is sustained. Where the trial court sustains a motion to dismiss before the defendant has presented his or her evidence, the reviewing court should remand the cause for a new trial in which the entire case may be reheard. *Ortmeyer v. Bruemmer*, 680 S.W.2d 384, 397 (Mo.App.1984). The judgment is reversed

2. For complete grounds upon which a guardian or conservator may be removed, § 475.110 directs the reader to § 473.140, a statute governing the removal of personal representatives.

**712**

and the cause remanded for a new trial in accordance with this opinion.

This court's discussion is not complete, however, since venue is an issue which may recur in the new trial. This court will therefore address Jerry and Pat's final point on appeal, that the Clay County Circuit Court erred when it transferred the case to Cooper County based on a lack of venue.

 Jerry and Pat cite *State ex rel. Uptergrove v. Russell,* 871 S.W.2d 27 (Mo.App. 1993), *Kueper v. Murphy Distributing,* 834 S.W.2d 875 (Mo.App.1992), and *In re Marriage of Ottmann,* 764 S.W.2d 153 (Mo.App. 1989), in support of their argument that Bob waived any objections to venue when he filed his own application for guardianship in Clay County. The above cases hold that, unless one first raises an objection to venue at the earliest possible opportunity, venue is waived by engaging in any action related to the merits of the case. *Uptergrove,* 871 S.W.2d at 30; *Kueper,* 834 S.W.2d at 879; *Ottmann,* 764 S.W.2d at 154. Bob filed his own application for guardianship on March 12, 1993, ten days before filing his motion for change of venue on March 22, 1993. Consequently, Jerry and Pat claim that Brandon's father waived his right to change venue by performing an action appertaining to the merits of this case.

Although Jerry and Pat are correct when citing the general venue rule, none of their cases involve guardianships, conservatorship, or the special venue statutes which control in such situations. In guardianship cases, change of venue is governed by § 475.040. That statute reads, in pertinent part:

> If it appears to the court ... at any time before the termination of the guardianship or conservatorship, that the proceeding was commenced in the wrong county ..., the court may order the proceeding with all papers, files and a transcript of the proceedings transferred to the probate division of the circuit court of another county. The court to which the transfer is made shall take jurisdiction of the case, place the transcript of record and proceed

to the final settlement of the case as if the appointment originally had been made by it.

The first question, therefore, is whether the instant proceeding was "commenced in the wrong county."

Section 475.035.3, governing venue for the appointment of a guardian, states:

> If proceedings are commenced in more than one county, they shall be stayed *except in the county where first commenced* until final determination of venue in the county where first commenced. The proceeding is deemed commenced by the filing of a petition. . . .

(emphasis added.) It seems clear that the probate judge of Clay County relied on this statute in determining that Cooper County was the forum of proper venue. In the Order Transferring Cause, the judge found:

> 4. That Brandon Reece, a minor, was subjected to the jurisdiction of the Circuit Court of Cooper County, Probate Division, at various times in the past, including proceedings regarding a guardianship of the person and the creation of a conservatorship.
>
> 5. That the conservatorship of Brandon Reece continues to be supervised by the Probate Division of the Circuit Court of Cooper County, and that the jurisdiction for said conservatorship remains in Cooper County.
>
> 6. That certain evidence may be more readily available because of the schools, treating physicians, and custodial persons in Clay County, Missouri, but that *because the Circuit Court of Cooper County had previously exercised jurisdiction with respect to the minor and has not transferred any jurisdiction to Clay County, Missouri, that the proper forum for this application for the appointment of a guardian rests in Cooper County, Missouri.*

(Emphasis added.)

 As the Clay County court noted, Cooper County had already acquired jurisdiction over guardianship matters relating to Brandon.[3] Guardianships are ongoing pro-

**3.** The original letters for guardianship of the estate were issued to Bob in a guardianship proceeding in Boone County, Missouri, the county where Bob and Brandon resided at the time of

ceedings which do not end until particular events occur, such as the ward reaching the age of eighteen. *See* § 475.083, RSMo Cum. Supp.1993. Bob could not have waived venue in the current case, because earlier guardianship and conservatorship proceedings had already been commenced in Cooper County. Pursuant to § 475.035.3, then, Cooper County held jurisdiction in this matter, and the transfer of venue was appropriate. Whether Cooper County continues to be the proper county for venue for the guardianship and conservatorship proceedings under the provisions of § 475.040 is a matter for determination by the circuit court of Cooper County, not Clay County. Point denied.

The judgment is reversed and remanded in accordance with this opinion.

All concur.

the auto accident. Bob obtained a change of venue to Cooper County, Missouri, because he had moved to Cooper County and the lawsuit seeking damages for Brandon's injuries and the wrongful death of Julie Reece was pending in Cooper County. Successor letters of conservatorship were subsequently issued and the conservatorship remains pending in Cooper County.