In the Interest of: L.C.F., N.A.F. and B.J.F., Minors.

Kathy Fournier Warren, Appellant,

v.

William L. Burkhart and Maxine M. Burkhart, Respondents.

No. WD 55403.

Missouri Court of Appeals, Western District.

March 31, 1999.

James C. Welch, Jr., Kansas City, for appellants.

Karen Woodley, Lincoln, for minors.

Martin D. McLaughlin, Warsaw, for respondents.

Before BRECKENRIDGE, C.J., LAURA DENVIR STITH and HOWARD, JJ.

BRECKENRIDGE, Chief Judge.

Kathy Fournier Warren appeals the trial court's judgment denying her motion to terminate the letters of guardianship over her children which were granted to William and

Maxine Burkhart on May 9, 1996, pursuant to § 475.030.4(2), RSMo 1994.[1] Ms. Warren raises three points on appeal, arguing that the trial court erred in denying her motion to terminate the letters of guardianship over her children because (1) the court was compelled to consider only her fitness, ability and willingness to be the guardian of her children and it lacked jurisdiction to award custody based on the best interests of the child; (2) the court improperly considered evidence of Ms. Warren's past conduct instead of focusing on her present conduct; and (3) if the trial court was correct in applying the special circumstances doctrine, its finding of special circumstances was not supported by substantial evidence. We hold that the trial court erroneously applied the guardianship statute and, therefore, reverse and remand this case.

### Facts and Procedural Background

The facts are presented in the light most favorable to the court's ruling, unless the court has made specific findings to the contrary. *Reece v. Reece*, 890 S.W.2d 706, 709 (Mo.App.1995). In the summer of 1995, Ms. Warren lived in Kansas City with her boyfriend, Tarlton White, and her four children. Mr. White was the father of her youngest child. In late July of 1995, Ms. Warren moved herself and her children from Kansas City to Benton County to live with her parents, Mr. and Ms. Burkhart. Ms. Warren claims she left Kansas City to "try to make a go of it" in the country. Ms. Burkhart claims that she and her husband took the three oldest children away from Kansas City to remove them from the abusive presence of Mr. White. In mid-September 1995, Ms. Warren returned to Kansas City, leaving her oldest three children with the Burkharts. Ms. Warren claimed she left them there temporarily so she could attend to some problems concerning her rented home in Kansas City. However, from October of 1995, until July of 1996, Ms. Warren and her youngest child lived in Kansas City with Mr. White, who was again her boyfriend.

On November 13, 1995, the Burkharts filed a petition for letters of guardianship over Ms. Warren's three oldest children, L.C.F, N.A.F., and B.J.F. Prior to the guardianship hearing, Karen Woodly was appointed guardian ad litem for the three children. On May 9, 1996, the Benton County Circuit Court, Probate Division, appointed the Burkharts guardians of the children. Ms. Warren did not attend the guardianship hearing, although she was notified.

In July of 1996, Ms. Warren moved back to Benton County, where she lived with her parents and her children. Ms. Warren remained in Benton County, living with her family, for one month, when she again moved out. On September 21, 1996, Ms. Warren married her current husband, James Michael Warren. On October 15, 1996, Ms. Warren filed a motion in the Circuit Court of Benton County, Probate Division, to terminate the letters of guardianship over her children and return custody of the children to her, or in the alternative, to transfer the case to the Juvenile Division. Following Ms. Warren's marriage and the filing of her petition to terminate the letters of guardianship, the only contact she had with the children was when they visited her the weekend before Easter in 1997, and a few phone calls. Prior to the November 12, 1997, hearing on Ms. Warren's motion to terminate the letters of guardianship, home studies were conducted on both the Burkharts and the Warrens. Both home studies returned positive results.

At the November 12, 1997, hearing on Ms. Warren's motion to terminate the letters of guardianship, evidence regarding Ms. Warren's past conduct and her present circumstances was received. The trial court also received testimony regarding the Burkharts' parenting capabilities, and considered the home studies and the recommendation of the guardian ad litem. Following the hearing, the trial court issued its judgement denying Ms. Warren's motion to terminate the letters of guardianship.[2] In it's order, the trial

---

1. All statutory references are to the Revised Statutes of Missouri 1994, unless otherwise indicated.

2. The trial court never ruled on Ms. Warren's motion to transfer the case to the Juvenile Division.

court found the above-stated facts and conclusions based on those facts, but specifically found:

> The court [sic] based on the facts and conclusions above cannot say that Kathy Warren is unwilling, unable or unfit but the court can and does say that at this time the significant bonding with the grandparents, school and community which the children have made since September of 1995 has rebutted the parental presumption and the welfare of the children require that William L. and Maxine Burkhart remain guardians of the persons of [L.C.F., N.A.F. and B.J.F.].

Ms. Warren subsequently filed a timely appeal challenging the trial court's denial of her motion to terminate the letters of guardianship over her three children.

### "Best Interest" Cannot Be the Sole Basis for Denying a Parent's Motion to Terminate Letters of Guardianship

 When considering a trial court's judgment in a non-jury probate proceeding regarding the termination of letters of guardianship, the judgment is reserved only if it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Estate of Williams*, 922 S.W.2d 422, 423 (Mo.App. 1996). Ms. Warren argues as her first point on appeal that the trial court erred in denying her motion to terminate the letters of guardianship because the court could only deny the motion if Ms. Warren was unfit, unwilling or unable to serve as the children's guardian. Ms. Warren argues the trial court's finding that she was fit, willing and able to serve as the children's guardian, but that the children's best interests were served by continuing the guardianship with the Burkharts, was erroneous because the court was limited by the language of the statute, which does not include a best interests determination. Therefore, the issue before this court is whether a guardianship may be continued when a parent who is found fit, willing and able to care for her children requests that it be terminated. Because we find that the trial court erroneously applied the guardianship statute, we need not consider Ms. Warren's remaining points on appeal.

Termination of a guardianship is authorized by § 475.083. This section sets forth seven situations in which the authority of the guardian terminates. One statutory ground for the authority of the guardian to terminate is if a court enters an order terminating the guardianship. Section 475.083.1(7). Section 475.083.2(2) authorizes the court to terminate letters of guardianship "[i]f the guardianship ... is no longer necessary for any other reason." This statute does not, however, set forth the circumstances under which a guardianship is no longer necessary.

 When construing a statute, courts are to "ascertain the intent of the legislature from the language used and give effect to that intent, if possible, and to consider the words used in their plain and ordinary meaning." *Butler v. Mitchell–Hugeback, Inc.*, 895 S.W.2d 15, 19 (Mo. banc 1995). "Courts look elsewhere for interpretation only when the meaning is ambiguous or would lead to an illogical result defeating the purpose of the legislature." *State ex rel. Md. Heights v. Campbell*, 736 S.W.2d 383, 387 (Mo. banc 1987). Statutory provisions relating to the same subject matter are considered *in pari materia*, and are to be construed together. *Reece*, 890 S.W.2d at 709–10. This court presumes that statutes *in pari materia* are intended to be read consistently and harmoniously. *Id.* at 710. Although § 475.083.2(2) does not set forth the conditions under which a guardianship is no longer necessary, those conditions can be ascertained by reading § 475.083.2(2) together with those statutes governing when a guardianship is necessary. Thus, to determine when a guardianship is no longer necessary, this court must begin by ascertaining when a guardianship is necessary.

The appointment of a guardian for a minor child is governed by three statutes: §§ 475.025, 475.030 and 475.045. *Reece*, 890 S.W.2d at 709. Section 475.025 provides that the father and mother, or survivor, are natural guardians who have the custody and care of the person of their child, as well as responsibility for the child's education. *Id.* Section 475.030.4 authorizes the granting of letters of guardianship for a minor who's parents are

deceased or "[w]here the parents or the sole surviving parent of a minor are unwilling, unable or adjudged unfit to assume the duties of guardianship," or where the minor's parents' parental rights have been terminated. Section 475.045 gives the parent or parents of a minor first priority to be appointed guardian or conservator of the minor, except as provided for in § 475.030.

■ Reading §§ 475.025, 475.030, and 475.045 *in pari materia*, the *Reece* court found:

> [L]etters of guardianship for a minor should not issue unless there is no parent available, willing or able to fulfill the parental role in caring for a child and providing for that child's needs as natural guardian. It is only when no natural guardian is fulfilling the parental duties and obligations [that] the appointment of a statutory guardian [is] necessary.

890 S.W.2d at 710. Like other statutes involving child custody, the guardianship statutes "create a rebuttable presumption that a minor child's best interest is served by having custody in the parent." *Matter of T.A.P.*, 953 S.W.2d 638, 642 (Mo.App.1997). *See also Williams*, 922 S.W.2d at 424. When this presumption is overcome by proof that the parent is unfit, unwilling or unable to take care of the child, then appointment of a statutory guardian is necessary. *T.A.P.*, 953 S.W.2d at 642.

■ After a court determines that a statutory guardian is necessary, letters of guardianship under § 475.030, are awarded as "a stop-gap measure to provide for the care and custody of a minor for the period of time when the natural guardian-parent is unable, unwilling, or unfit to perform" as natural guardian. *Flathers v. Flathers*, 948 S.W.2d 463, 468 (Mo.App.1997). Letters of guardianship are not equivalent to "prior custody decrees" in a dissolution and do not rebut the parental presumption in a custody modification action.[3] *Id.* at 467. A guard-

ianship is no longer necessary and is subject to termination when the parent is again fit, willing and able to perform his or her duties as the natural guardian. *Id.* at 468. Awarding and terminating the "temporary" care and custody of minors under the guardianship statutes requires the court to consider different criteria than does the award of "permanent" care and custody of minors pursuant to § 452.375, RSMo Supp.1995. *Id.*

■ Section 452.375.2, RSMo Supp.1995, establishes the best interests standard for determining the custody of a child pursuant to a dissolution. The statute sets forth eight non-exclusive criteria for determining the best interests of the child. Id. Unlike the dissolution statutes, the probate code, which encompasses the guardianship statute, § 475.030, does not include language directing the court to undertake a best interests determination. However, Missouri's overriding child welfare policy "is what is in the best interests of the child." Section 1.092, RSMo Supp.1998. Additionally, case law indicates that a child's best interests are at least a factor in the appointment of a guardian. *See T.A.P.*, 953 S.W.2d at 642 (probate code creates a rebuttable presumption that a minor child's best interests are served by having custody in the parent). *See also Williams*, 922 S.W.2d at 424.

Addressing the interplay of the guardianship statute and the best interests standard, the Missouri Supreme Court in *Cotton v. Wise*, 977 S.W.2d 263, 264 (Mo. banc 1998), found that the trial court was limited by the language of § 475.030 and could not issue letters of guardianship based solely on the children's best interests. In *Cotton*, the trial court awarded letters of guardianship to a non-parent based on the "equitable parent" doctrine. *Id.* Although the trial court found that the natural father was "not unfit or unable to care for the minor children," the court ruled that, based on the family history,

---

3. In holding that letters of guardianship of minors are not prior custody decrees for purposes of § 452.410, the court stated: "[W]e recognize that § 452.445(2) defines the appointment of a guardian of the person as a 'custody proceeding,' and § 452.445(3) defines a judicial order entered in such proceeding as a 'custody decree.' How-

ever, by its terms, § 452.445 only expressly applies to §§ 452.440 to 452.550, the Uniform Child Custody Jurisdiction Act." *Flathers*, 948 S.W.2d at 468. Therefore, *Flathers* declined to apply § 452.445 definitions of custody proceeding and decree to § 452.410 proceedings. *Id.*

"the minor children's growth and development may be detrimentally affected by placement with Wallace [father] or by elimination of contact with Viva [non-parent caregiver]." *Id.* The Supreme Court found that although the facts may have supported a finding that the father was unfit to care for the child, the legal conclusion reached by the trial court was incorrect. *Id.* The Court explained that under the trial court's equitable parent doctrine, "a 'better' parent simply could be substituted for the natural parent when that substitution seems to be in the best interests of the children." *Id.* Rejecting this possibility, the Court ruled that the award of custody under § 475.030 "must be premised upon a finding that the natural parent is unfit, unable or unwilling to care for his children." *Id.* Therefore, the Court remanded the case for "appropriate findings and orders under the guardianship statute."[4] *Id.* at 265–66.

Just as the trial court in *Cotton* was limited by the language of § 475.030, this court is limited by what the legislature has enacted, even if this court believes an important provision has been omitted. *State v. McClary,* 399 S.W.2d 597, 600 (Mo.App.1966). "The legislature has provided standards under which the courts of this state may abrogate or abridge the rights and prerogatives of natural parents." *Cotton,* 977 S.W.2d at 265. Section 475.030 is the legislative pronouncement of the standards under which courts may abridge the rights of parents under the guardianship statute. *See id.* at 264. Therefore, when determining whether a guardianship is no longer necessary, the courts of this state are bound by those standards. Because the legislature has not authorized the probate division, under § 475.030, to grant custody based on a best interests analysis, but has limited the determination to that of a parent's fitness, ability and willingness to act as guardian, *see Cotton,* 977 S.W.2d at 264, when faced with a motion to terminate letters of guardianship, the court's inquiry must stop when it ascertains that the child has a parent who is fit, able and willing to act as guardian.

However, the inquiry into the parent's fitness, ability and willingness must be done bearing in mind Missouri's child welfare policy, which is for the State to act in the best interests of the child. *See* § 1.092, RSMo Supp.1998. The definition of fitness encompasses many of the considerations spoken to in the best interests standard. *See Williams,* 922 S.W.2d at 424–25. The term "unfit" is given an expansive definition and courts are given ample discretion in applying that term. *Id.* at 425. A parent's morals are properly considered in the appointment of a guardian for a minor child. *Id.* at 424. Additionally, the fitness determination properly includes inquiry into factors such as "detriment to a child's well-being," "stability of the family life," "the amount of care the custodian will be able to provide," the home environment, and the "mental health or illness of the proposed custodian." *Id.* 425 (quoting *Uhing v. Uhing,* 241 Neb. 368, 488 N.W.2d 366, 372 (1992); *Lewis v. Lewis,* 154 Ga.App. 853, 269 S.E.2d 919, 921–22 (1980)). Furthermore, "evidence of neglect can demonstrate a parent's unfitness to serve as guardian, provided the neglect relates to the parent's duties as natural guardian." *Reece,* 890 S.W.2d at 711.

In this case, the prior award of guardianship to the Burkharts, based on a finding that Ms. Warren was unfit on May 9, 1996, is not dispositive of her fitness to be the children's guardian today. If Ms. Warren is able to show that she is currently fit, willing and able to serve as guardian of her children, the law presumes the children's best interests are served by her so acting. The court did not have the authority to go beyond determining Ms. Warren's fitness, ability and willingness to act as guardian of her children. The court is entitled to consider the children's welfare in determining whether Ms. Warren is fit, *see Williams,* 922 S.W.2d at 424–25, but it may not deprive Ms. Warren of custody of her children under the guardianship statute by determining that she is fit, but the children's best interests demand that

4. In a footnote, the Court commented on one possible appropriate order under § 475.030. The Court stated that "nothing in the guardianship statute would preclude the court from allowing visitation by the father … for so long as the trial court finds that such provisions are in the children's best interests." *Cotton,* 977 S.W.2d at 265 n. 2.

they remain with the Burkharts. *See Cotton,* 977 S.W.2d at 264.

Because the trial court misstated and erroneously applied the guardianship laws to the facts of this case, this court reverses and remands for "appropriate findings and orders under the state's guardianship statute." *See Cotton,* 977 S.W.2d at 265–66. In making its findings under the guardianship statute, the trial court may consider Ms. Warren's behavior leading up to the granting of guardianship to the Burkharts and her behavior since the award to the extent it is relevant to shed light on her current fitness to act as guardian of the children. *See Flathers,* 948 S.W.2d at 470. The award of guardianship to the Burkharts must be based upon a finding that Ms. Warren is unfit, unable, or unwilling to care for her children. *See Cotton,* 977 S.W.2d at 264. There are facts in this case upon which the court can base the required finding of Ms. Warren's unfitness or inability.

The ruling of the trial court is reversed and this case is remanded for additional proceedings consistent with this opinion.

All concur.