In re the ESTATE OF Clayton
Dean MOREAU, a Minor.

Robert Scott Royster, Petitioner–
Appellant,

v.

William and Marilyn Council,
Respondents–Respondents.

No. 26075.

Missouri Court of Appeals,
Southern District,
Division Two.

April 27, 2005.

Motion for Rehearing or Transfer to
Supreme Court Denied May 17, 2005.

Application for Transfer Denied
Aug. 30, 2005.

Daniel R. Schramm, Chesterfield, MO, for appellant.

Richard Anthony Skouby, St. James, MO, for respondents.

JEFFREY W. BATES, Chief Judge.

In April 1999, William and Marilyn Council ("the Councils") were granted letters of guardianship for their grandson, Clayton Dean Moreau ("C.D."), by the probate division of the Circuit Court of Pulaski County, Missouri. These guardianship letters were issued to the Councils after a trial at which the court adjudged C.D.'s natural parents, Robert Royster ("Father") and Mahealani Royster ("Mother"), unfit to act as the child's guardians. Only Father appealed from this judgment. We affirmed the Councils' appointment as C.D.'s co-guardians. *In re Moreau,* 18 S.W.3d 447 (Mo.App.2000) (*"Moreau I "*).

Insofar as pertinent here, § 475.083.2 states "[a] guardianship . . . may be terminated by court order after such notice as the court may require: . . . (3) If the court finds that a parent is fit, suitable and able to assume the duties of guardianship and it is in the best interest of the minor that the guardianship be terminated." [1] In March 2002, Father filed a third amended petition to terminate the guardianship of C.D. with the probate division of the Pulaski County Circuit Court. This petition alleged, *inter alia,* a guardianship was no longer necessary for any reason because Father "is a willing, able, and fit parent who can reassume custody of his son." The Councils denied this allegation in their answer to the petition. Mother did not join in Father's petition or otherwise seek to have the trial court reconsider or set aside its earlier adjudication that she was unfit to serve as C.D.'s guardian.

A second trial was held on July 9, 2003 to determine Father's current fitness to serve as C.D.'s guardian. In January 2004, the trial judge entered a judgment denying Father's petition to terminate the guardianship. The judgment included the following findings:

3. That [Father] and [Mother] have previously been adjudged unfit, unable and unwilling to assume the duties of guardianship over their son and that [the Councils] have had custody of [C.D.] for many, many years.

4. That [Father] has not substantially changed his behavior or associations that previously caused him to be adjudged unfit. [Father] is currently unfit to be the minor's guardian.

This appeal followed.

■ Our review of this case is conducted pursuant to Rule 84.13(d). We will affirm the trial court's judgment unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Moreau,* 18 S.W.3d at 449; *Matter of T.A.P.,* 953 S.W.2d 638, 639–40 (Mo.App. 1997). Father argues the trial court's decision not to terminate the guardianship was erroneous for two reasons: (1) the trial court applied an improper evidentiary standard in determining the current fitness of Father and Mother to serve as C.D.'s guardians; and (2) the trial court's decision is not supported by substantial evidence or is against the weight of the evidence because the Councils failed to offer sufficient evidence to overcome the presumption that Father is a fit person to assume guardianship of C.D. or to establish that continuation of the guardianship

1. All references to statutes are to RSMo (2000).

is necessary. Finding no merit in either contention, we affirm.

Because of the intertwined nature of the issues involved and to promote a better understanding of the rationale for this decision, our opinion in this second appeal should be read in conjunction with our earlier opinion in *Moreau I*. To avoid undue repetition, we will presume the reader is generally familiar with *Moreau I* and limit our recital of the facts from the prior appeal to those essential to our discussion of the issues addressed herein.

## Point I

In Father's first point, he contends the trial court misapplied the law in two respects: (1) by finding Father was still unfit because he had not substantially changed the behavior or associations that previously made him unfit; and (2) by not evaluating Mother's current fitness to serve as C.D.'s guardian. The essence of Father's argument is that, even though he and Mother previously had been adjudged unfit to serve as C.D.'s guardians, they both should have been afforded a rebuttable presumption of parental fitness once Father's petition to terminate the guardianship was filed. In other words, Father argues the mere filing of the petition to terminate the guardianship essentially nullified the prior adjudication and placed upon the Councils the duty to prove, once again, both Father and Mother were unfit. We find this argument to be fundamentally flawed.

 We agree with Father that letters of guardianship for a minor child can only be issued when "the parents or the sole surviving parent ... are unwilling, unable or adjudged unfit to assume the duties of guardianship...." § 475.030.4(3). Therefore, an award of custody to a third party, via letters of guardianship, "must be premised upon a finding that the natural parent is unfit, unable, or unwilling to care for his children." *Cotton v. Wise*, 977 S.W.2d 263, 264 (Mo. banc 1998). We also agree with Father that, in a proceeding brought by a third party to obtain letters of guardianship for a minor child, a natural parent is initially entitled to the benefit of rebuttable presumption that the minor child's best interest is best served by being in the custody of his or her parents. *In re L.C.F.*, 987 S.W.2d 830, 834 (Mo.App.1999). "When this presumption is overcome by proof that the parent is unfit, unwilling or unable to take care of the child, then appointment of a statutory guardian is necessary." *Id.*

In the case at bar, the rebuttable presumption of parental fitness was overcome at the first trial by proof, which the trial court found credible, that both Father and Mother were unfit to serve as C.D.'s guardians and, consequently, letters of guardianship should issue to the Councils. Mother did not appeal from the judgment, and Father's appeal was denied by this Court. *Moreau*, 18 S.W.3d at 453–54.

 In the first prong of Father's argument, he claims the presumption of his parental fitness was restored once he filed his petition to terminate the guardianship. Based on this premise, Father then argues the trial court erroneously required Father to prove he was fit, rather than requiring the Councils to rebut the presumption by proving, for a second time, Father was unfit. We find Father's argument untenable and conclude that in a proceeding to terminate C.D.'s guardianship, the burden of proving Father's fitness to assume custody of C.D. was imposed by statute upon Father.

 We begin by noting § 475.010(18) defines the word "Ward" to include "a minor ... for whom a guardian ... has been appointed." The next step in the

analysis is to examine § 475.083. Subsection 4 of this statute authorizes a person, on behalf of a ward, to individually petition the court to decrease the powers of the guardian. Subsection 6 states, in pertinent part, "[u]pon the filing of a petition without the joinder of the guardian ..., the court shall cause the petition to be set for hearing with notice to the guardian.... If the ward ... is not represented by an attorney, the court shall appoint an attorney to represent the ward ... in such proceeding. *The burden of proof by a preponderance of the evidence shall be upon the petitioner.* Such a petition may not be filed more than once every one hundred eighty days." (Underlining added.) Subsection 6 applies to a petition to terminate a guardianship. *See In re W.L.B.*, 6 S.W.3d 408, 411 (Mo.App.1999).

Here, the trial court followed this statute precisely. Father's petition to terminate the guardianship was made individually without the joinder therein of the Councils, who were C.D.'s co-guardians. The trial court set the matter for a hearing and appointed a guardian *ad litem* to represent C.D. in the proceeding. The trial court also required Father to prove the allegation in his petition that he was now a willing, able, and fit parent who could assume custody of C.D. That was the proper evidentiary standard for the trial court to apply pursuant to § 475.083.6.

Statutory construction aside, we would reach the same conclusion based solely on our review of applicable precedent. In *Searcy v. Seedorff*, 8 S.W.3d 113 (Mo. banc 1999), the trial court dissolved the marriage of Hannah and Ricky Searcy and granted third-party custody of their four children to the Seedorffs. Four months later, Hannah filed a motion to modify custody, alleging a substantial and continuing change in her circumstances had occurred because she was now gainfully employed and could provide the children with a stable and secure home. The trial court granted the motion to modify and transferred custody of the children to Hannah. *Id.* at 115. The Supreme Court of Missouri reversed the ruling and remanded the cause with instructions to deny the motion to modify because there had been no substantial change of circumstances of the children or their custodian to warrant a custody change. *Id.* at 118. The Supreme Court noted the trial court could not have initially awarded third-party custody to the Seedorffs unless the presumption in favor of parental custody had been rebutted. *Id.* at 118. In the Supreme Court's discussion of the issue, it made the following statement that we believe is controlling here: "the parental presumption applies only where the appropriate custodian is first determined in a child custody proceeding and the parent is a party to the proceeding, and not in a subsequent proceeding to modify custody." *Id.* at 117.

An action to have a guardian appointed for a minor child is one method by which child custody may be adjudicated in Missouri. *See State ex rel. Dubinsky v. Weinstein*, 413 S.W.2d 178, 180 (Mo. banc 1967); *Chipman v. Counts*, 104 S.W.3d 441, 446 (Mo.App.2003). Here, the issue of C.D.'s custody was first determined in the guardianship proceeding. Father and Mother were both parties, and the presumption in favor of parental custody was rebutted as to each one of them. The Councils were awarded custody of C.D. via the letters of guardianship issued by the probate division. Father's petition to terminate the guardianship amounts to nothing more than a vehicle to modify C.D.'s custody. Once the presumption of Father's parental fitness was overcome at the first guardianship trial, the presumption disappeared and did not apply to Father's subsequent petition to terminate the

guardianship. *Searcy,* 8 S.W.3d at 117; *Cotton,* 977 S.W.2d at 264; *In re Marriage of Carter,* 794 S.W.2d 321, 326–27 (Mo. App.1990).

In so holding, we acknowledge Father's reliance on *Flathers v. Flathers,* 948 S.W.2d 463 (Mo.App.1997), but this case does not support Father's arguments for two reasons. First, the issue in *Flathers* was whether "the parental presumption exists in a dissolution proceeding where a third party has previously been awarded letters of guardianship as to the minor child in question." *Id.* at 467. The case at bar is not a dissolution action; it is a continuation of the existing guardianship proceeding in which the issue of C.D.'s custody was first adjudicated. Second, the mother in *Flathers* was awarded custody in the dissolution action only after the guardianship had been terminated. *Id.* at 465. A guardianship was no longer necessary because the trial court found the mother was a fit and proper person to have custody of her children, based on then-existing conditions. *Id.* at 469–70. Once the guardianship was terminated, we agree the mother in *Flathers* was entitled to a renewed presumption of fitness when she sought custody of her children in the dissolution action. In contrast, the trial court in the case at bar refused to terminate C.D.'s guardianship because Father was still unfit to be the child's guardian. Under these circumstances, Father is not entitled to any presumption he is a fit parent so long as C.D.'s guardianship continues. Accordingly, *Flathers* is inapposite.

 In the second prong of Father's argument, he claims the filing of his petition to terminate the guardianship also restored Mother's presumption of parental fitness. Based on this premise, Father then argues the trial court erred by failing to address Mother's current fitness to

serve as C.D.'s guardian. We disagree. In the guardianship action, the trial court assumed jurisdiction over C.D.'s custody pursuant to the Uniform Child Custody Jurisdiction Act, §§ 452.440–.550. Section 452.495 states:

> A custody decree rendered by a court of this state which had jurisdiction under section 452.450 binds all parties who have been served in this state or notified in accordance with section 452.460, or who have submitted to the jurisdiction of the court, and who have been given an opportunity to be heard. As to these parties the custody decree is conclusive as to all issues of law and fact decided and as to the custody determination made, unless and until that determination is modified pursuant to law, including the provisions of section 452.410 and sections 452.440 to 452.550.

Mother participated in the first trial, was adjudged unfit, and did not appeal from the judgment. Accordingly, the ruling as to her fitness became *res judicata* because "the award of custody therein made is a conclusive adjudication in respect to the fitness and unfitness of the parents in respect to the over-all conditions then existing. Custody can later be changed only by proof of other further or different circumstances which call for such a change." *Garbee v. Tyree,* 400 S.W.2d 193, 195 (Mo. App.1966). In deciding whether to grant or deny *Father's* petition to terminate the guardianship, the trial court was not required to address *Mother's* current fitness because she had already been adjudicated unfit, and she did not petition the trial court to modify its earlier decision. Father's first point is denied.

*Point II*

In Father's second point, he contends the trial court's decision is not supported by substantial evidence or is against the

weight of the evidence because the Councils failed to offer sufficient evidence to: (1) overcome the presumption that Father is a fit person to assume guardianship of C.D.; or (2) establish that continuation of the guardianship is necessary. This argument lacks merit because it is based on an unsound premise. For the reasons already stated in disposing of Father's first point, the Councils did not bear the burden of proving either of these issues. Instead, Father bore the burden of proving that he was a fit parent and that the guardianship should be terminated. § 475.083.2(3); § 475.083.6.

We find *In re Werner*, 133 S.W.3d 108 (Mo.App.2004), dispositive of this point. There, an incapacitated adult ward filed a petition to terminate her guardianship, alleging she had been restored to capacity. After the trial court decided to continue the guardianship, Werner appealed. She argued the trial court's judgment was not supported by substantial evidence because the guardian failed to prove Werner was still incapacitated. Her argument was rejected because, as the petitioner, she bore the burden of proving she had been restored to capacity. "The burden was on Werner to prove that she had capacity to meet her essential requirements without court-ordered assistance. Section 475.083.6. She does not meet her burden by arguing that Waddell failed to prove the lack of that capacity." *Id.* at 111. Father's second point is denied.

The judgment of the trial court is affirmed.

PARRISH, P.J., and SHRUM, J., Concur.