

# In the Missouri Court of Appeals
# Eastern District

### DIVISION TWO

| | | |
|---|---|---|
| In the Matter of J.D.D. | ) | No. ED101337 |
| | ) | |
| J.R.D., JR., | ) | Appeal from the Circuit Court |
| | ) | of Marion County |
| Petitioner/Appellant, | ) | |
| | ) | |
| v. | ) | Honorable John J. Jackson |
| | ) | |
| J.L.D., | ) | |
| | ) | |
| Respondent/Respondent. | ) | Filed: December 16, 2014 |

### Introduction

J.R.D., Jr. (Appellant) appeals from the trial court's judgment denying his petition for letters of guardianship over the minor J.D.D. (Child) and granting J.L.D.'s (Mother) petition for habeas corpus. We reverse.

### Factual and Procedural Background

Appellant and Mother were divorced in 2007 and have a son together. Appellant has had custody of the parties' son since their divorce. On January 3, 2011, Mother gave birth to her second boy, Child, who is the subject of these proceedings. Although no paternity test has been performed, Child's biological father is presumed to be E.P., who has never been involved in Child's life and was given notice but failed to appear for these proceedings and is thus in default.

Prior to Child's birth, Mother approached Appellant about financing an abortion of Child or about Appellant and his partner being Child's parents. Appellant declined to finance an

abortion but did agree to take and raise Child once he was born. Mother listed Appellant's name on Child's birth certificate as the father. On January 5, 2011, Mother executed a hospital release form titled "Release of Infant to Other Than Parent" to allow Appellant to take Child home and care for him. The hospital release provided that Mother understood she was responsible for Child's health care needs until an order of termination of parental rights or a decree of transfer of custody and adoption was received by Hannibal Regional Hospital.

Appellant took Child home with him and cared for Child along with the parties' son. Around November 2011, when Child was ten months old, his stomach was temporarily paralyzed due to a virus, a medical condition called gastroparesis. Appellant took Child to the hospital where he was admitted and administered a feeding tube and an intravenous line for nutrition and hydration. After a two-month hospital stay, Appellant took Child back and forth to the hospital for check-ups. Child's treatment for and recovery from this medical condition spanned three months, and although Appellant informed Mother of Child's medical problems and invited her to come to the hospital to visit and see Child, Mother never went to the hospital to see or visit Child. Nor did Mother assume any of the responsibility for Child's health care needs or costs during this time or any other. For the next year and a half, Appellant took care of Child. During this time, Mother never visited Child or provided any support for Child.

On July 1, 2013, for the first time since Child's birth, Mother suddenly arrived at Appellant's residence accompanied by Missouri State Highway Patrol officers demanding physical custody of Child. Appellant showed the officers Child's birth certificate with his name on it, and the officers refused to physically take custody of Child from Appellant and give him to Mother. Between January 5, 2011 and July 1, 2013, Mother never attempted to obtain physical custody of or visitation with Child.

On July 22, 2013, Mother filed a Petition For Writ Of Habeas Corpus in the Circuit Court of Marion County, Case Number 13MM-CV00186, alleging Appellant had the unlawful physical custody of Child and seeking to have the trial court transfer physical custody of Child from Appellant to Mother.[1]  In response, on August 13, 2013, Appellant filed a Petition For Guardianship, Case Number 13MM-PR00033, seeking to have the trial court appoint Appellant as Child's statutory guardian so Appellant could lawfully retain legal and physical custody of Child.

The cases were consolidated and heard simultaneously at a two-day bench trial held on November 4, 2013 and November 27, 2013.

Appellant submitted evidence Mother had abandoned and neglected Child from January 5, 2011 to August 13, 2013, by providing no financial support to Appellant for Child and seeking no contact with Child during that time.[2]  Mother never visited Child nor provided any care for him during this time, including during his hospitalization.

Appellant presented evidence Mother was physically unable to have physical custody of Child because Mother has been diagnosed as disabled due to fibromyalgia, degenerative disc disease, chronic knee pain, chronic back pain, and chronic neck pain.  Mother testified her disabilities prevent her from accomplishing minor chores due to pain and that she is not supposed to lift anything over twenty pounds.  At the time of trial, Child weighed thirty pounds.

Appellant provided evidence Mother had also been diagnosed as being disabled due to bipolar disorder, personality disorder, and post-traumatic stress disorder.  Appellant provided evidence Mother has had seven psychiatric hospitalizations, including hospitalizations for suicidal attempts and ideations.

---

[1] On this same date, Mother filed a Motion to Modify the parties' Decree of Dissolution of Marriage in Case Number 07MM-CV00079 in the Circuit Court of Marion County.

[2] The one exception to this time frame is the Highway Patrol visit.

Toni Medina (Medina), Mother's caseworker, testified as of the time of trial, Mother takes a number of medications including Trazodone, a mood stabilizer and sleep aid; Naproxen for pain; Prilosec for gastrointestinal pain; Tramadol for pain; Lamotrigine, a mood stabilizer; Topamax, a mood stabilizer; Campral, to curb the urge to drink alcohol; and Citalopram, an anti-depressant. Medina also testified that as of June of 2013, Mother has reported a history of difficulties with mood swings, anger, past suicidal ideations and gestures, childhood emotional and sexual trauma, anxiety, paranoia, auditory hallucinations, cutting on herself, stress, coping with physical health issues, depression, explosive anger, flashbacks, nightmares, and alcohol abuse.

Mother testified that her former psychiatrist, Dr. Lyle Clark, diagnosed her with bipolar disorder with homicidal rages.

The guardian ad litem, Meredith Morrow Illa (Illa), testified she did not believe Mother should have guardianship of Child at the time of trial as it was not in Child's best interests. Illa cited reasons for her recommendation, to-wit: Mother's physical limitations; Mother's recent history of relapsing; not taking her medications; and failing to follow her caseworker Medina's recommendations, for example, to attend Alcoholics Anonymous meetings. Illa stated that although she saw some improvement in Mother's mental health, it was not in Child's best interests for Mother to have full-time custody of him at that time. Illa stated she believed guardianship with Appellant and visitation with Mother was the most appropriate action at that time and comported with what she thought was in Child's best interests.

On January 7, 2014, the trial court entered a judgment without findings in the docket sheets granting Mother's Petition for Writ of Habeas Corpus and denying Appellant's Petition for Guardianship. On February 6, 2014, Appellant filed a Motion for New Trial and/or Motion

4

to Amend Judgment. On March 18, 2014, the trial court heard Appellant's post-trial Motion and on March 25, 2014, denied it. This appeal follows.[3]

## Points on Appeal

In his first point, Appellant maintains the trial court erred in denying his petition for guardianship because the judgment was unsupported by substantial evidence and against the weight of the evidence, in that the evidence established Mother was physically and mentally unfit and unable to assume the duties of natural guardian of Child.

In his second point, Appellant contends the trial court erred in denying his petition for guardianship because its judgment was unsupported by substantial evidence and against the weight of the evidence, in that the evidence established Mother was unfit to assume the duties of natural guardian of Child due to her abandonment and neglect of Child.

In his third point, Appellant claims the trial court erred in denying his petition for guardianship because it erroneously declared and applied the law by failing to recognize and apply the judicial exception created by In the Interest of K.K.M., 647 S.W.2d 886 (Mo.App. E.D. 1983), which permits awarding custody of a child to a third party when the welfare of the child, for some special or extraordinary reason, demands that disposition.

## Standard of Review

The trial court's judgment in guardianship proceedings is to be affirmed unless it is unsupported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. In re M.B.R., 404 S.W.3d 389, 392 (Mo.App. S.D. 2013).

---

[3] Mother did not file a responsive brief.

Discussion

Points I and II – Unfitness

Three statutes govern appointment of a guardian for a minor. In re Estate of A.T., 327 S.W.3d 1, 2 (Mo.App. E.D. 2010); Flynn v. Flynn, 34 S.W.3d 209, 211 (Mo.App. E.D. 2000). Section 475.025[4] provides that the father and mother are the natural guardians of a minor child. Section 475.045.1 gives the parents first priority in appointment as guardian, except as otherwise provided in Section 475.030. If the parents cannot fulfill guardianship duties, then the court should appoint the most suitable person willing to serve, whose appointment serves the best interests of the child for a stable and permanent placement. Section 475.045.3; Estate of A.T., 327 S.W.3d at 2. Section 475.030.4 provides that letters of guardianship of the person of a minor may be granted in the following cases:

(1) Where a minor has no parent living;
(2) Where the parents or the sole surviving parent of a minor are unwilling, unable or adjudged unfit to assume the duties of guardianship;
(3) Where the parents or the sole surviving parent have had their parental rights terminated under chapter 211.

Section 475.030.4(2) is at issue in the instant case.

A court should not appoint a guardian for a child unless there is no parent available, willing, and able to care and provide for the child as a natural guardian. Estate of A.T., 327 S.W.3d at 2. These statutes create a rebuttable presumption that a natural parent is the appropriate custodian for his or her child. Cotton v. Wise, 977 S.W.2d 263, 264 (Mo.banc 1998). Evidence that a parent is unwilling, unable, or unfit to take charge of the child, however, will overcome this presumption. Id. Consequently, if there is sufficient evidence presented that Mother is unfit, unwilling, or unable to take charge of Child, then the presumption in favor of Mother dissipates. In re Estate of L.G.T., 442 S.W.3d 96, 101 (Mo.App. S.D. 2014). The parties

---

[4] All statutory references are to RSMo. 2012, unless otherwise indicated.

stipulated at trial that if a guardianship was necessary for the future care of Child, Appellant would be a suitable guardian.

In the instant case, Mother abdicated to Appellant her duties to Child with regard to the provision of care, home, protection, and medical care[5] for two and a half years after his birth. There was also evidence that Mother made no effort to fulfill her duty of providing any financial support or insurance[6] for Child while Child was in the custody of Appellant. Mother never visited Child at Appellant's home, nor did she see Child when he was in the hospital for two months due to gastroparesis. Mother provided no support, neither personal nor financial.[7] These failures are properly regarded as constituting abandonment and neglect. Evidence of neglect can demonstrate a parent's unfitness to serve as guardian, provided the neglect relates to the parent's duties as natural guardian. Reece v. Reece, 890 S.W.2d 706, 711 (Mo.App. W.D. 1995).

A parent's duty to provide for a child is a personal obligation which cannot be satisfied when, by chance, another provides that service in the parent's stead. Reece, 890 S.W.2d at 710. The fact the minor child does not suffer deprivation of necessary food, clothing, lodging, medical or surgical attention because such needs are being supplied by another does not abrogate the parent's obligation. Id. Likewise, under the law of parental abandonment, it would be unfathomable if a parent could have absolutely no contact with her child, spend no money on the cost of raising her child, and take no responsibility for rearing her child and yet still not abandon her child because she first asked someone else to take care of the child. Id. The fact that support

---

[5] See Estate of L.G.T., 442 S.W.3d at 114 ("except for occasional consent forms, [Mother] abdicated to [Grandmother] her duties to [Child] after June, 2011 in regard to provision of home, protection, medical care and education and thereafter maintained only infrequent contact with her without any excusable cause.").

[6] See In re Moreau, 18 S.W.3d 447, 451-52 (Mo.App. S.D. 2000) (Appellant made little effort to fulfill his duty of providing financial support for C.D. while C.D. was in Respondents' custody; during nearly 24 months Respondents had physical custody of C.D. up to the time of trial, Appellant had sent Respondents only $175 to $225 in support; aside from this token sum, Respondents bore all financial costs of caring for C.D. while he was in their custody.).

[7] Moreau, 18 S.W.3d at 450-51; Estate of L.G.T., 442 S.W.3d at 108.

7

was supplied from another source does not obliterate a natural parent's duty of support. Id. When a mother leaves her child with another, contributes no provision of support and does not communicate with or visit her child, the duty of support is not met. Id.

Sufficient evidence exists to overcome the statutory presumption that Child's best interests would be served by Mother having guardianship of him because her abandonment and neglect of Child demonstrates her unfitness to serve as Child's guardian. Matter of T.A.P., 953 S.W.2d 638, 644 (Mo.App. S.D. 1997). When proof is made that no natural parent is fulfilling parental duties, then appointment of a statutory guardian is necessary. Id. at 642, citing In re D.L.J., 916 S.W.2d 437, 438 (Mo.App. E.D. 1996).

In determining Mother's unfitness to serve as Child's guardian, we also consider the instability of her life, the care she will be unable to provide for Child on a daily basis due to her physical infirmities, the environment in which Child will be raised, the lack of any effort made by Mother during their two-and-a-half-year separation to furnish any personal or financial support for Child, and her mental health. Estate of Williams, 922 S.W.2d 422, 425 (Mo.App. S.D. 1996).

Child's guardian ad litem, Illa, was of a similar opinion. Illa opined at trial that Mother is not fit to be an appropriate guardian for Child. Illa made, without reservation, a recommendation to the trial court that the appropriate action was to appoint Appellant Child's guardian and it was not in Child's best interests to be placed under Mother's guardianship.

There is an utter lack of factual findings and legal conclusions supporting the trial court's decision denying Appellant guardianship of Child and instead giving it to a woman who abandoned and neglected Child for the first two and a half years of his life. Although normally when the trial court makes no findings of fact we construe all facts in favor of the judgment, we

8

cannot find any facts in the record supporting Mother's role as Child's guardian other than that she gave birth to Child and, as such, the statutes favor her with a presumption of suitability. This presumption has been overcome. The trial court's judgment is against the weight of the evidence.

Based on the foregoing, Points I and II are granted. Our resolution of Points I and II renders disposition of Point III unnecessary. The judgment of the trial court is reversed.

Conclusion

The judgment of the trial court granting Mother's petition for writ of habeas corpus and denying Appellant's petition for guardianship is reversed in its entirety. Appellant's petition for guardianship of Child is granted. Mother's petition for writ of habeas corpus is denied.

_Sherri B. Sullivan_
Sherri B. Sullivan, P.J.

Mary K. Hoff, J., and
Philip M. Hess, J., concur.

9