Wallace COTTON, Appellant,

v.

Viva WISE, Respondent.

No. 80769.

Supreme Court of Missouri,
En Banc.

Oct. 20, 1998.

Mary Deborah Benoit, St. Louis, for Appellant.

Bryan Hettenbach, Clayton, Marie Kenyon, St. Louis, for Respondent.

Mary E. Davidson, St. Louis, for Guardian Ad Litem.

WOLFF, Judge.

The question presented here is whether the trial court can by-pass the provisions of Missouri's guardianship statute and grant custody and guardianship of minor children to a person the court deems to be an "equitable parent." Because the guardianship statute, section 475.030, RSMo 1994, is quite sufficient in the circumstances presented here to serve the interests of these children, we reverse and remand for the entry of an order complying with the statute.

Wallace Cotton and Bobbi Jo Cotton were married on June 14, 1982. At the time of her marriage, Bobbi Jo had two daughters, ages 9 and 7, who are not related to Wallace Cotton. The younger of Bobbi Jo's daughters, Viva Wise, is the respondent here.

Two children were born during the marriage of Wallace and Bobbi Jo, S.A. in November 1986 and D.S. in September 1988. While Wallace resided with Bobbi Jo, there were daily altercations marked with physical violence against Bobbi Jo and her daughters. Wallace moved out of the family home before the birth of his younger child. During the time that Wallace and Bobbi Jo were separated, he failed to maintain child support and, at the time of trial of this matter, owed over $11,000 in back child support. Wallace remained away from the home until 1995. A few months after he moved back, Bobbi Jo died, in January 1996. When Bobbi Jo died, Wallace went to live with his sister and left the children in the care of Viva Wise, their half-sister. Viva and the children went to live with Lola, Bobbi Jo's other daughter. Viva took primary responsibility for caring for her two half-siblings, Wallace's children, without support from Wallace, though the children have continued to have visitation with Wallace. Viva and the children moved

several times to the homes of various family members until Viva established her separate residence where she and the children currently reside.

The trial court's record and its findings of fact are replete with references to Wallace's deficiencies as a parent. The record and the trial court's findings, moreover, document the care, nurturing, and stability that Viva Wise has provided for these two young children. After Bobbi Jo died, Wallace said he thought the children would be "better off" remaining with Viva, who had provided much of their care during their mother's illness. At trial, Wallace said he believed Viva is "doing a good job" with the children.

The record supports the trial court's conclusion that granting custody to Viva Wise is in the children's best interests under an "equitable parent" notion. However, the legal doctrine under which the court must fashion its order is not an equitable parent notion but, rather, the guardianship statute. Section 475.030, RSMo 1994.

Under the version of "equitable parent" adopted by the trial court here, a "better" parent simply could be substituted for the natural parent when that substitution seems to be in the best interests of the children. The phrase also implies that the non-parent is a "parent" and, thus, on equal footing with a natural parent. The phrase "equitable parent" was adopted from a decision by the Michigan Court of Appeals in *Atkinson v. Atkinson,* 160 Mich.App. 601, 408 N.W.2d 516, 519 (1987). *Atkinson* was a divorce case that held that a husband who was not the biological father of a child born or conceived during the marriage could be "an equitable parent" under certain circumstances. *Id.* By contrast, a similar notion of "equitable parent" was rejected by the South Dakota Supreme Court in *D.G. v. D.M.K.,* 557 N.W.2d 235, 241 (S.D.1996). While the phrase sounds like a doctrine, its meaning and application are not well fixed nor widely accepted. No reported Missouri case has adopted the theory.

Unless a statutory scheme is plainly inadequate under circumstances where a court has a duty to act, there is no need for the court to exercise its equity powers to fashion a "better" remedy than exists in the statutes. Section 475.030.4, RSMo 1994, provides that:

> [l]etters of guardianship of the person of a minor may be granted in the following cases:
>
> (1) Where a minor has no parent living;
>
> (2) Where the parents or the sole surviving parent of a minor are unwilling, unable or adjudged unfit to assume the duties of guardianship;
>
> (3) Where the parents or the sole surviving parent have had their parental rights terminated under chapter 211, RSMo.

A natural parent has the benefit of a rebuttable presumption that he is the appropriate custodian, but the presumption may be overcome by evidence that a parent is unfit, unable or unwilling to take charge of the child. *Estate of Williams,* 922 S.W.2d 422, 424 (Mo.App.1996). Respondent contends that the trial court's extensive discussion of Wallace's shortcomings suggests that Wallace is unfit, unable, or unwilling to care for the children. Respondent here takes the hopeful position that the very fact that the trial court's decision granted Viva Wise's guardianship petition amounts to such a finding. We are unable to agree that the requisite finding has been made.

We note the trial court's conclusion that "Viva may be awarded custody of the minor children, though Wallace is not unfit or unable to care for the minor children, if the minor children's growth and development may be detrimentally affected by placement with Wallace or by elimination of contact with Viva." Although the trial court's recitation of facts following that statement is some proof that Wallace is unfit, unable, or unwilling to care for his children, the legal conclusion embedded in that statement is not correct. The award of custody to Viva must be premised upon a finding that the natural parent is unfit, unable, or unwilling to care for his children. In the circumstances here, there is ample evidence upon which the trial court can base the necessary finding of unfitness or inability under the statute. The determination of unfitness must be made in the first instance by the trial court after

reviewing all the evidence and giving due regard to the presumption in favor of the natural parent. Such a determination is based not only on present circumstances, but on the natural parent's history of dealing with the children. *Reece v. Reece,* 890 S.W.2d 706, 710–711 (Mo.App.1995).

The guardian *ad litem* points out that, at least since *Matter of Scarritt,* 76 Mo. 565 (1882), Missouri courts have recognized, in addition to the criteria in the guardianship statute, that "some special or extraordinary reason" for the welfare of the child may justify naming a guardian other than the natural parent. The court of appeals opinion in *In the Interest of K.K.M.,* 647 S.W.2d 886, 890 (Mo.App.1983), traces the history of this judicially created exception. The guardianship statute under which these cases were decided provided for guardianship of the person of a minor where a minor's parents or sole surviving parent are "adjudged *unsuitable or incompetent* for the duties of guardianship. . . ." Historical and Statutory Note to Section 475.030, *Vernon's Revised Statutes of Missouri,* Volume 26, p. 519. (Emphasis added.) In 1983, after the opinion in *K.K.M.,* this statutory section was revised to include the current criteria:

> Where the parents or sole surviving parent of a minor are *unwilling, unable or adjudged unfit* to assume the duties of guardianship, . . .

Section 475.030, RSMo 1994. (Emphasis added.)

It is difficult to determine precisely what change in meaning was intended by the change in wording. The terms "unsuitable" and "unfit" are dictionary synonyms. *See, Webster's Third New International Dictionary* (G. & C. Merriam Co.1976).[1] Under this statute, a court must adjudge the natural parent unfit or find that he is unable or unwilling to care for the children before mov-

ing to the question of appointing a non-parent as guardian. It is not necessary here to determine whether the judicially created "special or extraordinary" circumstance should survive this statutory change, because in the circumstances of the current case it would be extraordinary if the trial court were unable under the language of the current statute to make the optimal arrangements possible in this family's circumstances for the welfare of the children.[2]

Our difference with the trial court is not a quibble. The legislature has provided standards under which the courts of this state may abrogate or abridge the rights and prerogatives of natural parents. Though the standards are broadly phrased, they are nonetheless entitled to be observed. As significantly, the statutes provide procedural safeguards and mechanisms for review for the courts to follow. Wallace Cotton may or may not be awarded custody and primary guardianship of his children under the trial court's order after remand, but the parties will have the benefit of the guardianship statute to ascertain the procedures to be followed and the substantive standards to be applied. The problem with a court-fashioned "equitable parent" doctrine is that the court has to improvise, as it goes along, substantive standards and procedural rules about when legal custody may be modified, what terms and conditions may be set, and other matters that already have well-charted passageways under state statutes and related court decisions.

This case combines Wallace's petition for *habeas corpus,* filed in September 1996, and Viva's petition for guardianship, filed the following month. We find no error in the trial court's denial of *habeas corpus* relief. However, we reverse and remand for the entry of

---

1. The clear change in the statute is elimination of the term "incompetent," which has substantial legal meaning, and the insertion of the simple terms "unable" and "unwilling." The former term also covers the case of the parent in prison, which was specifically provided for in the previous statute. Thus, it is quite possible that no change in meaning was effected by the replacement of "unsuitable" with "unfit."

2. Though Wallace may be judged to be unfit, unable or unwilling to care for his children, nothing in the guardianship statute would preclude the court from allowing visitation by the father, thus maintaining the child-parent relationship that Wallace has with the children, for so long as the trial court finds that such provisions are in the children's best interests.

appropriate findings and orders under the state's guardianship statute.

All concur.