**In the Interest of E.N.K., R.M.R., and R.C.R., Plaintiffs,**

**M.S.S. and M.M.S, Appellants,**

**v.**

**M.R.C., M.T.C., R.R.R., and John Doe, Respondents.**

**No. WD 62789.**

Missouri Court of Appeals, Western District.

Feb. 10, 2004.

---

Sharlie Pender, Independence, MO, for appellants.

Cheri Cole Simpkins, Independence, MO for plaintiffs.

Curtis G. Eylar, Kansas City, MO, for respondents.

Before ELLIS, P.J., LOWENSTEIN and BRECKENRIDGE, JJ.

PATRICIA BRECKENRIDGE, Judge.

M.M.S. and M.S.S. (Aunt and Uncle) appeal the trial court's judgment granting them co-guardianship of their niece, R.M.R., and nephew, R.C.R. On appeal, Aunt and Uncle argue that the trial court erred in failing to terminate the parental rights of the children's mother, M.R.C. (Mother). Because this court finds that the trial court failed to dispose of the rights of one of the natural fathers, the judgment is not final for purposes of appeal. The appeal is dismissed.

### Factual and Procedural History

In January 1997, Mother filed a petition requesting that Aunt be granted letters of guardianship of Mother's three children: E.N.K., a female child who was born October 31, 1990; R.M.R., a female child who was born December 13, 1993; and R.C.R., a male child who was born on December 14, 1994. At the time, Mother was on probation on a municipal conviction for child neglect and had a substance abuse problem. E.N.K.'s natural father consent-

ed to the appointment of Aunt as her guardian, and R.M.R. and R.C.R.'s natural father also consented to the appointment of Aunt as their guardian. The probate court appointed Aunt as the children's legal guardian on January 16, 1997.

Initially, Aunt and Uncle thought they would care for the children until such time as Mother was able to straighten out her life and properly care for the children. The children remained under Aunt and Uncle's exclusive care and custody for the next six years, however. During that time, Mother requested visitation with the children on only two occasions, while the natural fathers and an unknown alleged father of R.M.R. and R.C.R. never requested visitation. From January 1997 to January 2003, Mother sent only one card to the children and did not send them any letters, cards, or gifts. Despite being ordered in April 1998 to pay child support in the amount of $359 per month, the only support Mother provided to the children between January 1997 and January 2003 was a $33 payment, involuntary tax refund intercepts of $333 and $358.51, and two $50 checks from her live-in boyfriend.

On November 8, 2001, Aunt and Uncle filed a Petition for Adoption seeking to adopt the three children. In their petition, Aunt and Uncle alleged, *inter alia,* that Mother had willfully abandoned E.N.K., R.M.R., and R.C.R. and had "willfully, substantially, and continuously neglected to provide the children with the necessary care and protection for a period of at least six months immediately prior to the filing of the Petition for Adoption." Aunt and Uncle made the same allegations concerning the natural father of E.N.K., the natural father of R.M.R. and R.C.R., and an unknown alleged father of R.M.R. and R.C.R. Aunt and Uncle alleged that the adoption would promote the children's best interest and welfare.

The family court commissioner subsequently appointed a qualified social worker to perform an adoption home study on Aunt and Uncle. The social worker performed the study and recommended that Aunt and Uncle be allowed to adopt the three children. The social worker believed that the adoption was in the children's best interest.

The family court commissioner held a hearing on Aunt and Uncle's adoption petition. The hearing began on January 30, 2003, and was continued to March 7, 2003. At the start of the hearing, the commissioner noted that Mother had been personally served and had filed an answer. The commissioner further noted that the natural fathers of E.N.K., R.M.R., and R.C.R., and the unknown alleged father of R.M.R. and R.C.R., had been served by publication, but had failed to answer or appear and, thus, were in default.

During their testimonies, Aunt and Uncle requested that their prayer for relief in their petition be amended. Specifically, they asked that their adoption petition be amended to request co-guardianship of E.N.K. instead of adoption. The reason they requested co-guardianship of E.N.K. was because E.N.K., who is blind, mentally retarded, does not speak, and has several other medical and developmental problems, receives insurance benefits from the state to help address her special needs. If Aunt and Uncle were to adopt E.N.K., she would lose these insurance benefits that could otherwise be maintained if Aunt and Uncle retain guardianship of her. Because the family's insurance plan through Uncle's employer indicated that it would not cover E.N.K.'s special needs, Aunt and Uncle decided to amend their adoption petition to seek co-guardianship of E.N.K. Aunt and Uncle specifically testified, however, that they were still seeking to adopt R.M.R. and R.C.R.

Aunt, Uncle, the children's maternal grandfather, and the social worker who performed the home study testified in support of the adoption petition. Mother and her boyfriend testified in opposition to the petition. At the close of the evidence, the family court commissioner asked for the guardian ad litem's recommendation. The guardian ad litem recommended "final adoption" of R.M.R. and R.C.R. by Aunt and Uncle and "a continuing guardianship" of E.N.K. by Aunt and Uncle.

After taking the matter under advisement, the family court commissioner made recommendations which he entitled, "Findings and Recommendations for Letters of Guardianship." In his recommendations, the commissioner made the following statements concerning Mother:

> That the natural mother of said children willfully abandoned, and willfully, substantially, and continuously neglected to provide the children with the necessary care and protection for a period of at least six months immediately prior to the filing of the Petition due in part to her current health limitations, and her total failure to show any interest in the children since January, 1997, and the Court finds that the natural mother is presently unfit and unwilling and unable to provide for the care and protection of these children.

The commissioner made similar statements concerning one of the natural fathers and the unknown alleged father of R.M.R. and R.C.R. The commissioner recommended that Aunt and Uncle be made co-guardians of all three children. A family court judge later adopted the commissioner's recommendations and entered them as the court's judgment. Letters of guardianship subsequently issued, appointing Aunt and Uncle co-guardians of E.N.K., R.M.R., and R.C.R. Aunt and Uncle filed this appeal.

## Judgment is Not Final

 Aunt and Uncle's sole point is that the trial court erred in not terminating Mother's parental rights to R.M.R. and R.C.R. because the evidence established that grounds for termination exist and that termination would be in the children's best interests. Before this court can consider the merits of Aunt and Uncle's claim, however, it must first determine whether jurisdiction is proper. This court has a duty to consider, *sua sponte,* issues concerning jurisdiction of the appeal. *Gibson v. Brewer,* 952 S.W.2d 239, 244 (Mo. banc 1997). To have jurisdiction to review a lower court's judgment, there must be a final, appealable judgment. *Id.* "An appealable judgment resolves all issues in a case, leaving nothing for future determination." *Id.* If the trial court's judgment is not final, this court is without jurisdiction to consider the appeal, and the appeal must be dismissed. *Id.*

Although not raised by either party, this court notes that the trial court's judgment does not dispose of one of the natural fathers. In its judgment, the court made the following findings concerning the fathers in this case:

> That the natural father and the "John Doe" second alleged father of said children willfully abandoned, and willfully, substantially, and continuously neglected to provide the children with the necessary care and protection for a period of at least six months immediately prior to the filing of the Petition for Adoption and therefore the Court finds the natural father and the unknown second alleged father are unfit, unwilling and unable to care for these children.

There are two natural fathers, however— the natural father of E.N.K. and the natural father of R.M.R. and R.C.R. The judgment does not indicate to which natural

father the court was referring, nor does it indicate why the court omitted any findings concerning the other natural father.

■ Section 475.030.4, RSMo 2000,[1] provides that letters of guardianship of a minor may be granted in three circumstances:

(1) Where a minor has no parent living;

(2) Where the parents or the sole surviving parent of a minor are unwilling, unable or adjudged unfit to assume the duties of guardianship;

(3) Where the parents or the sole surviving parent have had their parental rights terminated under chapter 211, RSMo.

Under this statute, the natural parent is entitled to the "rebuttable presumption that he is the appropriate custodian, but the presumption may be overcome by evidence that a parent is unfit, unable or unwilling to take charge of the child." *Cotton v. Wise*, 977 S.W.2d 263, 264 (Mo. banc 1998).

In *Cotton*, the Supreme Court reversed a judgment of guardianship on the basis that, while the record and several of the court's findings indicated that the natural father was unfit, the trial court had erroneously concluded that it could name a non-parent guardian without having to find that the father was unfit or unable to care for the children. *Id.* The Court held that a guardianship under section 475.030.4(2) "must be premised upon a finding that the natural parent is unfit, unable, or unwilling to care for his children." *Id.* By requiring such a finding in section 475.030.4(2), the legislature set a standard for abridging natural parents' rights, and provided "procedural safeguards and mechanisms for review for the courts to follow." *Id.* at 265. Thus, because the trial court had errone-

ously concluded that it did not have to find the father unfit or unable to name a non-parent guardian, the Court in *Cotton* reversed and required the trial court to make findings as to whether the natural father was, in fact, unwilling, unable, or unfit. *Id.* at 265–66.

While the Court required findings under the circumstances in *Cotton*, whether findings as to a natural parent's unwillingness, inability, or unfitness are required in *all* cases granting letters of guardianship is unclear. This court does not need to resolve this issue, however, because in this case, the court does more than simply omit findings as to whether one of the natural fathers was unwilling, unable, or unfit. Rather, the reference to one of the natural fathers and the unknown alleged father, combined with the lack of any reference to the other natural father, indicates that the court neither considered, nor disposed of, the omitted natural father.

The failure to dispose of one of the natural fathers makes the judgment not final. *Gibson*, 952 S.W.2d at 244. Without a final judgment, this court is without jurisdiction to consider the appeal. *Id.* The appeal must be dismissed. *Id.*

When the trial court reconsiders this case to address the finality of its judgment, it should also address several inconsistencies between the record and the judgment. Specifically, the record indicates that, in their orally-amended petition, Aunt and Uncle requested that they be granted co-guardianship of E.N.K., and that they be permitted to adopt R.M.R. and R.C.R. The judgment, which consists of the family court commissioner's recommendations adopted without modification, does not state that the court ever considered and denied the adoption of R.M.R. and R.C.R., nor does the judgment state

1. All statutory references are to the Revised Statutes of Missouri 2000.

that the court ever considered and denied the request to terminate the parental rights of Mother, the natural father, or the unknown alleged father of R.M.R. and R.C.R.

■ Rather, the judgment suggests just the opposite. When interpreting a judgment, this court examines the language of the judgment in its entirety and determines the intention of the trial court from all parts of the judgment. *Panettiere v. Panettiere*, 945 S.W.2d 533, 539 (Mo.App. 1997). The language of the entire judgment raises the question whether the court treated Aunt and Uncle's petition for adoption as a petition for co-guardianship not simply of E.N.K., per Aunt and Uncle's oral amendment to their petition, but of R.M.R. and R.C.R. also.

In the judgment, the court mischaracterizes the purpose for which the social worker was appointed, and it mischaracterizes her recommendation. Specifically, the judgment finds that "[t]he children and these Petitioners have been investigated by suitable persons to evaluate Petitioners *as to their suitability of becoming Co–Guardians of the children.*" (Emphasis added.) The commissioner's order appointing the social worker clearly stated, however, that the social worker was to do an adoption home study, which is what the social worker did. Moreover, the judgment goes on to find that "the Findings and Recommendations for Letters of Guardianship has been recommended in the written report filed herein." Yet in both the original written report and the addendum, which were filed before Aunt and Uncle orally amended their petition to request co-guardianship of E.N.K., the social worker emphatically recommended that Aunt and Uncle be permitted to adopt all three children.

The court similarly mischaracterizes the guardian ad litem's recommendation. The court found that "the Guardian Ad Litem has given the recommendation that it would be in the children's best interests that the Court issue Letters of Co Guardianship to both Petitioners." In the only recommendation from the guardian ad litem on the record before this court, however, the guardian ad litem recommended co-guardianship of E.N.K. only, and "final adoption" of R.M.R. and R.C.R.

These erroneous findings, combined with the lack of any reference to the termination of Mother's and the fathers' parental rights or to Aunt and Uncle's request to adopt R.M.R. and R.C.R., suggest that the court intended to rule only on the issue of co-guardianship of all three children. Co-guardianship of R.M.R. and R.C.R., however, should not have become an issue unless and until the court decided not to grant the adoption. Section 453.101, the statute cited by the court in its judgment, states that "[i]n the event that the juvenile court does not grant the adoption, the court may order that a guardian be appointed under the provisions of chapter 475, RSMo, to provide long-term care for the child." While this statute provides for granting guardianship in lieu of adoption, the language of the statute indicates that guardianship is a remedy considered after the remedy of adoption is considered and denied. The language of the judgment could be interpreted to find that the court believed the only remedy Aunt and Uncle were seeking with regard to R.M.R. and R.C.R. was co-guardianship. Thus, the remedy of adoption, which would also include the termination of Mother's, the two natural fathers', and the unknown alleged father's parental rights to R.M.R. and R.C.R., may not have been considered.

The appeal is dismissed due to the lack of a final judgment.[2] When the court ad-

dresses the finality issue, it is suggested that the court also correct the inconsistencies between the record and the judgment and clarify its ruling. Since this matter has been pending for over two years, it is urged that the trial court expedite its proceedings.

All concur.

---

2. Aunt and Uncle did not raise, and the parties did not brief, whether a judge of the family court division has the authority to order a guardianship under section 453.101 when there is an existing guardianship pending in the probate division. Since this court finds that there is no final, appealable judgment, we do not consider any issues concerning the trial court's subject matter jurisdiction.