ROBERT M. CLAYTON III,
Special Judge, concurring, in part, and dissenting, in part
I concur with the part of the majority opinion concluding that Plaintiff has a right to pursue an independent action under section 452.375.5(5)(a) RSMo Supp. 2011 for custody and visitation of children born during her relationship with Defendant, but I would grant Plaintiffs request and remand this case for a full hearing on the merits. However, in light of the United States Supreme Court’s decision in Obergefell v. Hodges, — U.S. -, 135 S.Ct. 2584, 192 L.Ed.2d 609 (2015), I believe this matter should be transferred to the Missouri Supreme Court to determine whether, under the circumstances of this case, the above-referenced statutory scheme is “plainly inadequate,” in accordance with Cotton v. Wise, 977 S.W.2d 263, 264 (Mo. banc 1998), demonstrating a need for the court to exercise its equity powers.
I. DISCUSSION
A. The Relevant Allegations of Plaintiffs Petition
The relevant allegations of Plaintiff s petition, which we accept as true at this stage of the proceeding, are as follows. Plaintiff and Defendant, a same-sex couple, were in a relationship together from 1995 until January 2007, and the parties lived with one another from 1996 until January 2007. In 1995, Plaintiff and Defendant had initial conversations about having children. In 1997, the parties had a commitment ceremony in Kansas City, Missouri,[1] *450 and in 2000, Defendant permanently-changed her name to Plaintiffs. In addition, in February 2001, the parties purchased a home together in Kansas City, Missouri. Beginning in 2002, Plaintiff and Defendant made multiple attempts to have children via insemination, ultimately resulting in Defendant giving birth to two children on March 9, 2004 (“the children”).
Between March 2004 and August 2007, Plaintiff “functionally behaved as the children’s second parent, sharing equally in child-rearing expenses and acting as sole guardian while [Defendant] worked during the day.” In January 2007, the parties agreed to separate and underwent formal mediation which determined visitation, division of debts, and Plaintiffs removal from the household. Mediation also determined that the children would keep Plaintiffs last name. In January 2010, Defendant suggested the parties draft a will with a guardianship clause for the children. Following Plaintiffs and Defendant’s separation and until June 13, 2013, the parties followed a set visitation schedule and the parties shared equally in child-rearing activities and expenses. Additionally, after the parties separated, Plaintiff “act[ed] functionally as parent[ ] to the children, including paying for medication and tuition, attending school field trips, and taking the children to various medical and dentist appointments.”
Defendant has not allowed Plaintiff to see or talk with the children since June 13, 2013, and on June 18, 2013, Defendant sent Plaintiff a text message indicating, “[The children] will be living at my house until the parenting plan issue is resolved. I will call the police if you try to come and get them.”
Plaintiffs petition is titled as a “Motion to Determine Parent-Child Relationship, Custody, and Visitation.”
B. Section 452.375.5(5)(a) and an Independent Action for Custody and Visitation
In 2012, the Missouri Supreme Court issued its opinion in In re T.Q.L., 386 S.W.3d 135 (Mo. banc 2012), declaring that section 452.375.5(5)(a) RSMo Supp. 2011[2] could be pleaded as an independent action .for custody and visitation. This case best represents the current state of the law in parentage, custody, and visitation cases where the parties never married and one party is not a biological parent of the child; however, it does not involve parentage, custody, or visitation questions of same-sex couples. In T.Q.L., a man (“the plaintiff’) who was never married to the child’s biological mother, who “acted as [the] [c]hild’s father, taking an active role in his life,” and who was determined not to be the child’s biological father pursuant to a DNA test, filed a petition to determine parentage, custody, and visitation. 386 S.W.3d at *451 137, 137 n. 1. The plaintiffs petition alleged, (1) the child’s biological mother was unfit to be a custodian because of specific alleged acts; (2) the child’s unknown biological father was unfit to be a custodian because, inter alia, he never came forward to assert his rights as the child’s father; and (3) granting custody to the plaintiff would be in the child’s best interests. Id. at 138, 139-40. The child’s biological mother filed a motion to dismiss the plaintiffs petition for failure to state a claim, and the trial court granted the motion. Id. at 138.
The plaintiff appealed, and the Missouri Supreme Court reversed the trial court’s dismissal of the plaintiffs petition on the grounds the petition sufficiently alleged a cause of action for third-party custody pursuant to section 452.375.5(5)(a). T.Q.L., 386 S.W.3d at 137, 139-40. The Court found that pursuant to section 452.375.5(5)(a):
Third-party custody or visitation may be awarded “when the court finds that each parent is unfit, unsuitable, or unable to be a custodian, or the welfare of the child requires, and it is in the best interests of the child’ so long as the court deems the other person or persons requesting custody [or visitation] ‘to be suitable and able to provide an adequate and stable environment for the child.’
T.Q.L., 386 S.W.3d at 139 (quoting section 452.375.5(5)(a)). The Supreme Court held the plaintiffs petition met the requirements of section 452.375.5(5)(a) because the petition alleged the unfitness of the child’s biological mother, the unfitness of the child’s biological father, and that granting the plaintiff custody would be in the child’s best interests. T.Q.L., 386 S.W.3d at 139-40.
Here, like in T.Q.L., there has been no marriage between the parties, and Plaintiff, a party who is not a biological parent, alleges she acted as the children’s parent by taking an active role in their lives, and she has filed an action to determine parentage, custody, and visitation. Therefore, I agree with the majority that “[u]nder T.Q.L.,■ [Plaintiff] has the right to assert her claims for child custody and visitation in an independent proceeding under section 452.375.5(5)[ (a) ].” It is important to note that such an independent proceeding initiated by Plaintiff or a similarly-situated plaintiff could clearly survive a motion to dismiss if there are allegations of unfitness as there were in T.Q.L. Alternatively, and less clearly, while T.Q.L.’s interpretation of section 452.375.5(5)(a) also allows for an independent proceeding for third-party custody and visitation in situations where “the welfare of the child requires,” the petition in T.Q.L. did not assert any specific factual basis to support these terms, aside from the facts supporting the claim of “unfitness,” and the Supreme Court’s analysis focused on the facts supporting the “unfitness” prong. T.Q.L., 386 S.W.3d at 137-40. Other than vague, conclusory allegations mirroring the language of the statute, which any third-party could make, potentially violating Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), it is unclear what facts would need to be alleged for an independent action to stand under “the tvelfare of the child required” prong of section 452.375.5(5)(a).
While there are a limited number of cases defining the preceding italicized language of section 452.375.5(5)(a), “the welfare of the child requires,”[3] none have *452 addressed the language in the context of an independent proceeding or as it applies to same-sex couples. Without specific statutory direction from the legislature, courts will continue to face difficult factual circumstances involving the parent-child relationship using these six words. It is the children of same-sex couples who will be most severely affected by being limited in their opportunity to maintain bonds with a party who is not a biological parent but who has, as was alleged in this case, “functionally behaved as the children’s second parent.” See Matter of Alison D. v. Virginia M, 77 N.Y.2d 651, 657-58, 569 N.Y.S.2d 586, 572 N.E.2d 27 (N.Y.1991) (Kaye, J., dissenting) (indicating that when statutes are silent with respect to the rights of parties who are not biological or adoptive parents, the impact “falls hardest on the children [born into families with a gay or lesbian parent], limiting their opportunity to maintain bonds that may be crucial to their development”).
Because the majority opinion is the first case to suggest the applicability of section 452.375.5(5)(a) under the unique factual circumstances as in this case, I would grant Plaintiff’s request to remand. Remand would permit a full hearing on the merits and the potential of full briefing and arguments on fundamental, constitutional rights, which arose from Obergefell after this case was dismissed by the trial court.
C. Equitable-Parent Doctrine
Related to the impact of the unsettled law regarding the rights and remedies available to those persons involved in same-sex relationships is Plaintiff’s argument that this Court should adopt what this author will refer to as “an equitable-parent doctrine.”[4] An equitable-parent *453 doctrine, which has been set forth and adopted by a majority of the Wisconsin Supreme Court in a case involving a same-sex couple, provides a circuit court has equitable power to determine that a party has a parent-like relationship with a child and that a significant triggering event may justify court intervention in the child’s relationship with a biological or adoptive parent. In re Custody of H.S.H.-K., 193 Wis.2d 649, 533 N.W.2d 419, 420-21, 435-38 (1995). Pursuant to an equitable-parent doctrine:
To demonstrate the existence of the petitioner’s parent-like relationship with the child, the petitioner must prove four elements: (1) that the biological or adoptive parent consented to, and fostered, the petitioner’s formation and establishment of a parent-like relationship with the child; (2) that the petitioner and the child lived together in the same household; (3) that the petitioner assumed obligations of parenthood by taking significant responsibility for the child’s care, education and development, including contributing towards the child’s support, without expectation of financial compensation; and (4) that the petitioner has been in a parental role for a length of time sufficient to have established with the child a bonded, dependent relationship parental in nature.
To establish a significant triggering event justifying state intervention in the child’s relationship with a biological or adoptive parent, the petitioner must prove that this parent has interfered substantially with the petitioner’s parent-like relationship "with the child, and that the petitioner sought court ordered visitation within a reasonable time after the parent’s interference.
Id. at 435-36. In addition, if those elements are sufficiently alleged and proven, a court must then determine whether visitation is in the best interests of the child. Id.
Thus far, no Missouri case has adopted an equitable-parent doctrine. See White v. White, 293 S.W.3d 1, 15, 15 n.8 (Mo.App. W.D.2009). As correctly noted by the majority, the current state of the law in Missouri, including White, Cotton, and T.Q.L., justifies the rejection of an equitable-parent doctrine.[5] In Cotton, the Missouri Supreme Court held the trial court erred in using a theory of equitable parentage because “[ujnless a statutory scheme is plainly inadequate under circumstances where a court has a duty to act, there is no need for the court to exercise its equity powers to fashion a ‘better’ remedy that exists in the statutes.” 977 S.W.2d at 263-66, 264. In other words, Cotton could be read to indicate that Missouri courts should not adopt an equitable-parent doctrine if there is an adequate statutory scheme in place. See id. at 264, 265. As indicated in Section B, section 452.375.5(5)(a) may constitute an adequate statutory scheme which allows Plaintiff to assert her claims for child custody and visitation in an independent proceeding.
However, in light of the decision in Obergefell, in which the United States Supreme Court held same-sex couples have the constitutional, fundamental right to *454 marry, 135 S.Ct. at 2599, it is unclear which statutory schemes can be deemed adequate or “plainly inadequate” as they relate to parentage, child custody, and visitation of children born to same-sex couples, whether married or not. Post-Obergefell, it is unclear whether state law adequately addresses these issues in Missouri’s Uniform Parentage Act, sections 210.817 to 210.852 RSMo,[6] or other areas of the law in Chapter 452 involving Dissolution of Marriage, not to’mention the third-party custody and visitation statute section 452.375.5(5)(a) mentioned herein. While Obergefell addresses the right to marry, it also pronounced that “choices' concerning contraception, family relationships, procreation, and childrearing” are protected by the Constitution and that “‘[t]he right to marry, establish a home and bring up children is a central part of the liberty protected by the Due' Process Clause.’ ” 135 S.Ct. at 2599, 2600 (quoting Zablocki v. Redhail, 434 U.S. 374, 384, 98 5.Ct. 673, 54 L.Ed.2d 618 (1978)) (internal quotations omitted).
The most appropriate manner of addressing these issues is with legislative action to provide the statutory direction for courts to tackle these highly sensitive and emotional cases. A legislatively-enacted statutory scheme would provide the most comprehensive path for courts to follow. However, in the absence of legislative guidance, it may be appropriate for Missouri courts to adopt an equitable-parent doctrine when a party to a same-sex marriage or attempted same-sex marriage seeks custody or visitation. Cf. Cotton, 977 S.W.2d at 264, 265. Unfortunately, “[t]he problem with a court-fashioned ‘equitable parent’ doctrine is that the court has to improvise ... substantive standards and procedural rules about when legal custody may be modified ...” Id. at 265.
Because this case was filed, briefed, and argued at the trial court and at the appellate court, all prior to the decision in Obergefell, which establishes a related, fundamental right, I believe transfer is most appropriate for the parties to address these issues and for the Missouri Supreme Court to determine whether the current law is “plainly inadequate” in accordance with Cotton.
II. CONCLUSION
Based on the foregoing, I concur with the part of the majority opinion concluding' that Plaintiff has a right to pursue an independent action under- section 452.375.5(5)(a) for custody and visitation of the children born during her relationship with Defendant, but I would grant Plaintiffs request and remand this case for a full hearing on the merits. 'However, in light of Obergefell, I believe this matter should be transferred to the Missouri Supreme Court to determine whether the above-referenced statutory scheme is “plainly inadequate” under Cotton, 977 S.W.2d at 264.

. Plaintiff makes no allegation the parties ever attempted to marry under the laws of this state or any other state. In addition, the record does not reflect whether marriage was recognized for the parties in any state prior to, during, or after conception of the two children born to Defendant during the course of Plaintiff s and Defendant’s relationship. Because this case was filed and argued prior to Obergefell, the parties have not fully briefed or argued any constitutional question with respect to the impact of Obergefell’s holding that same-sex couples have the fundamental right to marry or with respect to fundamental, constitutional rights which arose from Oberge-fell. 135 S.Ct. at 2599, 2600. The majority suggests Plaintiff has waived her constitution *450 al arguments because she did not make them to the trial court. However, I believe these arguments were not available to the Plaintiff before the trial court. See Brunner v. City of Arnold, 427 S.W.3d 201, 217 (Mo.App.E.D. 2013) (“[t]he critical question in determining whether waiver occurs is whether the party affected had a reasonable opportunity to raise the unconstitutional act or statute by timely asserting the claim before a court of law”) (emphasis omitted) (quoting State ex rel. York v. Daugherty, 969 S.W.2d 223, 225 (Mo. banc 1998)).

. There was legislation, effective August 28, 2011, which amended various subsections of section 452.375 RSMo, but none of those amendments are relevant to this appeal. Because the RSMo Supp. 2011 version of section 452.375.5(5)(a) discussed in T.Q.L. is the same as the current version of section 452.375.5(5)(a), for simplicity purposes all further statutory references to section 452.375.5(5)(a) are to RSMo Supp. 2011.

. Cases not involving an independent proceeding under section 452.375.5(5)(a) have interpreted "the welfare of the child requires" language of the statute to mean that special or extraordinary circumstances render it in the child’s best interests that a third-parly be granted custody or visitation. See T.W. ex rel. R.W. v. T.H., 393 S.W.3d 144, 145-46, 150 *452 (Mo.App.E.D.2013) (involving a grandmother’s petition for guardianship and her motion to intervene in biological father’s paternity action); K.S.H. ex ret M.S.H. v. C.K., 355 S.W.3d 515, 516-17, 521 (Mo.App.S.D.2011) (involving a grandmother’s motion to intervene in biological father's paternity action); Jones v. Jones, 10 S.W.3d 528, 531-32, 537 (Mo.App.W.D.1999) (involving a grandmother’s motion to intervene in modification of dissolution action); Flathers v. Flathers, 948 S.W.2d 463, 464-65, 469-70 (Mo.App.W.D. 1997) (involving grandparents’ motion to in- “ tervene in dissolution action); see also Young v. Young, 59 S.W.3d 23, 24-25, 31 (Mo.App. W.D.2001) (involving a grandmother's petition for intervention in dissolution action and finding section 452.375.5(5)(a) does not require "endangerment of the welfare of the child”) (emphasis added). "With respect to what constitutes special or extraordinary circumstances ... ■ our appellate courts, including this court, have held that a significant bonding familial custody relationship with third parties can constitute a special or extraordinary reason or circumstance rendering it in a child’s best interests to award third-party custody.” Flathers, 948 S.W.2d at 470. Taking Plaintiff's allegations as true and construing them liberally in her favor, which our standard of review requires us to do, see Conway v. CitiMortgage, Inc., 438 S.W.3d 410, 413-14 (Mo. banc 2014), Plaintiff and the children had a significant bonding familial custody relationship. I agree with the majority that; (1) ”[s]ection 452.375.5(5)1 (a)], as interpreted by Missouri courts, is limited in important respects that were not present in Troxel"', (2) section 452.375.5(5)(a), unlike the statute at issue in Troxel, does not permit just "any person” to file an independent proceeding for third-party custody and visitation; and (3) based upon the facts alleged in Plaintiff's petition, including those previously referenced in this footnote, Plaintiff "is not simply any third party that [has] come[] along” asserting a right to custody and visitation, (quotations omitted).

. An equitable-parent doctrine has also been referred to as a "court-fashioned equitable parent doctrine” or an "equitable parenting standard.” See Cotton, 977 S.W.2d at 265 ("court-fashioned 'equitable parent’ doctrine”); White v. White, 293 S.W.3d 1, 15 (Mo.App.W.D.2009) ("equitable parenting standard”).

. I disagree with the majority’s broad conclusion that “the justification for rejecting an equitable parentage argument is stronger today than at the time White was decided" (underlined emphasis added here). While I agree with the majority that T.Q.L., decided after White, combined with the holdings in White and Cotton, justifies rejection of an equitable-parent doctrine, I do not believe T.Q.L., White, and Cotton stand for rejecting an equitable parentage argument in all circumstances. As discussed below, I believe it may be appropriate for Missouri courts to adopt an equitable-parent doctrine in some circumstances post-Obergefell.

. See DeWitt v. Lechuga, 393 S.W.3d 113, 116 (Mo.App.W.D.2013) (referring to sections 210.817 to 210.852 RSMo as Missouri’s Uniform Parentage'Act).