In the Matter of M.B.R., a minor child.

Brooke Burch, Appellant,

v.

Dallas Ross and Diana Ross, Respondents.

No. SD 31997.

Missouri Court of Appeals, Southern District, Division One.

Feb. 25, 2013.

Daniel D. Whitworth, Joplin, MO, for Appellant.

Susan Appelquist, Mount Vernon, MO, for Respondents.

GARY W. LYNCH, P.J.

Brooke Burch ("Mother") appeals from a judgment denying her petition for termination of the co-guardianship of her parents, Dallas and Diana Ross ("Grandparents"), with her over her daughter, M.B.R. ("Child"). The trial court found that Mother failed to prove it was in the best interest of Child that the guardianship be terminated. Mother claims this finding is not supported by substantial evidence and is against the weight of the evidence. Finding no merit in Mother's claims, we affirm.

### Factual and Procedural Background

The facts, viewed in a light most favorable to the trial court's judgment, *In re K.J.R.H.*, 330 S.W.3d 821, 823 (Mo.App. 2011), are as follows:

Child was born in July 2002. Four months later, Mother consented to guardianship of Child, with Mother and Grandparents named as co-guardians.[1] From 2002 through approximately 2006, Mother and Child lived with Grandparents while Mother completed her education.

In July 2006, Mother married Kyle Burch ("Stepfather"). As of the time of the marriage, Grandparents had been told only that Stepfather had "been in prison for two years, he was 18 at the time when it happened, a girl was one week from being 16 years old, and she was a sheriff's daughter, and that's the only reason he got convicted because the sheriff pursued it so hard."

Shortly after the wedding, Mother and Child moved in with Stepfather. Mother and Stepfather have been the primary care and financial providers for Child since their marriage. Grandparents, however, spent a great deal of time with Child and remained involved in Child's life, providing care after school, visiting on weekends, attending Child's events, and vacationing together.

In April 2010, Mother and Stepfather approached Grandparents about Stepfather adopting Child. At this time, another family member researched Stepfather's criminal charges and shared the information with Grandparents. While he was convicted of only one count of indecent liberties with a child, Stepfather was charged with two counts of rape and three counts of indecent liberties involving four girls who were thirteen to fifteen years old. Stepfather was nineteen years old at the time. After this information came to light, Grandparents shared it with Mother and Stepfather. Mother and Stepfather

---

1. The natural father consented to the initial guardianship. Paternity has never been conclusively adjudicated, and service was never accomplished on natural father for the pending action.

resented Grandparents for raising this issue and retaliated by severely restricting Child's contact with Grandparents.

In July 2010, Mother filed a petition to terminate the guardianship, contending it was no longer necessary for Grandparents to be guardians.[2] Grandparents responded with a motion for temporary custody and/or visitation and a counter-petition to terminate Mother's guardianship. The trial court appointed a guardian ad litem to represent the interest of Child. Two home studies were performed to evaluate both Mother and Grandparents. The home studies concluded that Mother and Grandparents had suitable homes for Child.

In May 2011, a trial was held on all pending issues, and Mother, Stepfather, Grandparents, Child, and the guardian ad litem testified. At the conclusion of the testimony, the trial court expressed its concern that Stepfather's sexual contact with the children occurred "because you were an immature 19-year-old, or was it because you're a man who likes 13- to 15-year-old girls? I don't know the answer to that." The trial court ordered that a psychosexual evaluation of Stepfather be conducted "fairly quickly" to assess whether Stepfather presented a future risk of harm to Child. Stepfather agreed to cooperate.

On November 23, 2011, over six months later and after Mother's counsel's assurances as early as July 13, 2011, that an evaluation was forthcoming, a self-referred psychosexual evaluation of Stepfather was filed with the trial court. Several psychological tests were administered, including a Sexual Adjustment Inventory and Screening Scale for Pedophilic Interests ("SSPI"). The SSPI was administered to identify pedophilic interests and sexual attraction to "prepubescent chil-

dren." While Stepfather's answers to the non-sex-related test items were considered to be "accurate and truthful," his answers to questions with an obvious sexual connotation and relationship "indicate some minimization, but are for the most part truthful." Notably, the evaluation did not mention Stepfather's conviction for indecent liberties with a child or address the trial court's stated concern as to whether Stepfather was a danger to post-pubescent thirteen- to fifteen-year-old girls. The evaluation also contained the psychologist's unsolicited opinion that Stepfather's test results "indicate presence of antisocial thoughts and behaviors, violent tendencies, and a level of impulsiveness" in the "severe problem" risk range.

In its judgment, the trial court found that "Mother is fit, suitable and able to assume the duties of guardianship," but that "Mother failed to meet her burden of establishing that it is now in [Child's] best interests to terminate the guardianship." The trial court's judgment overruled Mother's petition to terminate the guardianship and granted Grandparents' motion for visitation. Mother timely brings this appeal, challenging the denial of her petition to terminate the guardianship.

### Standard of Review and Applicable Law

■ The trial court's judgment in guardianship proceedings is to be affirmed unless it is unsupported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *In re K.J.R.H.*, 330 S.W.3d 821, 823 (Mo.App.2011).

■ "The application of this standard of review varies depending on the burden

**2.** Mother filed the motion in the Probate Division of the Circuit Court of Lawrence County, Missouri. The Probate Division is referred to in this opinion as the "trial court."

of proof applicable at trial and the error claimed on appeal to challenge the judgment." *Pearson v. Koster,* 367 S.W.3d 36, 43 (Mo. banc 2012).

> When the burden of proof is placed on a party for a claim that is *denied,* the trier of fact has the right to believe or disbelieve that party's uncontradicted or uncontroverted evidence. If the trier of fact does not believe the evidence of the party bearing the burden, it properly can find for the other party. Generally, the party not having the burden of proof on an issue need not offer any evidence concerning it.

*White v. Dir. of Revenue,* 321 S.W.3d 298, 305 (Mo. banc 2010) (internal citations and quotation marks omitted; emphasis added).

■■ "A claim ... that the judgment is against the weight of the evidence necessarily involves review of the trial court's factual determinations." *Pearson,* 367 S.W.3d at 43. In reviewing "questions of fact, the reviewing court will defer to the trial court's assessment of the evidence if any facts relevant to an issue are contested." *Id.* at 44. "Once contested, 'a trial court is free to disbelieve any, all, or none of th[e] evidence,' and 'the appellate court's role is not to re-evaluate testimony through its own perspective.'" *Id.* (quoting *White,* 321 S.W.3d at 308–09).

Section 475.083[3] governs the termination of a minor guardianship before emancipation. A guardianship may be terminated by court order if "the court finds that a parent is fit, suitable and able to assume the duties of guardianship *and* it is in the best interest of the minor that the guardianship be terminated." Section 475.083.2(3) (emphasis added). In the event the petition for termination is made without the joinder of the guardian, "the court shall cause the petition to be set for hearing with notice to the guardian." Section 475.083.6. The burden of proof, by a preponderance of the evidence, is on the petitioner. *Id.*

### Discussion

In her sole point on appeal, Mother asserts the trial court's denial of her petition to terminate the guardianship is not supported by substantial evidence and is against the weight of the evidence because the "status quo," the recommendation of the guardian ad litem, the findings of the home studies, and the psychosexual evaluation of Stepfather supported termination of the guardianship. Neither asserted reason has any merit.

■ First, the trial court's judgment *denying* Mother's petition is not required to be supported by substantial evidence. This is so because section 475.083.6 assigned to Mother, as petitioner, the burden of proving that "it is in the best interest of the minor that the guardianship be terminated[,]" as required by section 475.083.2(3) to terminate the guardianship. This issue and the evidence on this issue were contested in the trial court. *See White,* 321 S.W.3d at 308 (stating, "One way a party contests an issue is by contesting the evidence[,]" and then identifying several methods by which evidence is contested, all of which were present here).[4]

---

3. All statutory references are to RSMo 2000 through Cum.Supp.2004, unless otherwise indicated.

4. To contest evidence, a party need not present contradictory or contrary evidence. While a party can contest evidence by putting forth evidence to the contrary, *Howde-*

shell *v. Dir. of Revenue,* 184 S.W.3d 193, 199 (Mo.App.2006), a party also can contest evidence by cross-examination, *see Sandy Ford Ranch, Inc. v. Dill,* 449 S.W.2d 1, 6 (Mo. banc 1970), or by pointing out internal inconsistencies in the evidence. *Id.* For example, "[a] legitimate factual dispute or

Therefore, the trial court was not only free to disbelieve Mother's uncontradicted or uncontroverted evidence, *see Pearson,* 367 S.W.3d at 43, but its *denial* of Mother's petition was not required to be supported by substantial evidence because Grandparents, as the parties *not* having the burden of proof, had no obligation to offer *any* evidence contrary to that issue, *White,* 321 S.W.3d at 305.

■ Second, Mother has waived her claim in her point that the judgment is against the weight of the evidence. This claimed legal reason for trial court error is not mentioned or developed in any manner in the argument portion of Mother's brief. " 'Any claim of error raised in a point relied on which is not addressed in the appellant's argument is deemed waived.' " *G.J.R.B. ex rel. R.J.K. v. J.K.B.,* 269 S.W.3d 546, 559 (Mo.App.2008) (quoting *Cohen v. Cohen,* 73 S.W.3d 39, 52 (Mo.App. 2002)).

■ Third, even if Mother had not waived her against-the-weight-of-the-evidence claim, she could not prevail on it. Virtually all of the evidence before the trial court was based upon witness testimony, and we defer to the trial court's witness-credibility determinations in an against-the-weight-of-the-evidence claim. *Pearson,* 367 S.W.3d at 44; *Houston v. Crider,* 317 S.W.3d 178, 186 (Mo.App.2010) (where the resolution of conflicting testimony is required to determine the merits of an against-the-weight-of-the-evidence argument, an appellate court defers to the trial court's credibility determinations in the same manner as in the resolution of a

not-supported-by-substantial-evidence argument). Mother's argument in support of her point is nothing more than a series of challenges to the trial court's witness-credibility determinations, inviting us to re-evaluate the testimony through our own perspective, which is not permitted by our standard of review. *See Pearson,* 367 S.W.3d at 43. Therefore, Mother's argument completely fails to lend any logical support to her against-the-weight-of-the-evidence claim. *See Houston,* 317 S.W.3d at 187. Mother's point is denied.

### Decision

The trial court's judgment is affirmed.

NANCY STEFFEN RAHMEYER, WILLIAM W. FRANCIS, JR., JJ., concur.

---

credibility determination is presented by . . . cross-examination of a witness for the Director which raises a legitimate credibility dilemma with respect to a material aspect of the Director's case." *Furne v. Dir. of Revenue,* 238 S.W.3d 177, 181 (Mo.App. 2007) (internal citations omitted). A party also may contest evidence by arguing to the

trial court that the witness is not credible as apparent from the witness's demeanor, *Beckemeier v. Baessler,* 270 S.W.2d 782, 787 (Mo. banc 1954), or because of the witness's bias or the witness's incentive to lie. *State v. Johnson,* 700 S.W.2d 815, 817 (Mo. banc 1985). *White,* 321 S.W.3d at 308.