

# In the
# Missouri Court of Appeals
## Western District

| | |
|---|---|
| IN THE INTEREST OF: K.R. & C.R., ) | |
| ) | |
| Juveniles; ) | |
| ) | |
| J.P. & D.P., ) | **WD85969** |
| ) | **OPINION FILED:** |
| Appellants, ) | **AUGUST 22, 2023** |
| ) | |
| v. ) | |
| ) | |
| S.R. & T.R., ) | |
| ) | |
| Respondents. ) | |

**Appeal from the Circuit Court of Cass County, Missouri**
**The Honorable J. Michael Rumley, Judge**

**Before Division One: Gary D. Witt, Chief Judge, Presiding, Mark D. Pfeiffer, Judge,**
**Anthony Rex Gabbert, Judge**

The co-guardians of two minor children appeal the judgment of the Cass County Circuit Court terminating their co-guardianship pursuant to section 475.083.[1] They argue in three points on appeal that the judgment is against the weight of the evidence, that the judgment is not supported by the evidence, that the court improperly shifted the burden of proof, that the court abused its discretion, and that the judgment misstated and misapplied the law. The judgment is affirmed.

**Facts**

---

[1] All statutory references are to RSMO 2016 as supplemented unless otherwise stated.

Two minor children ("Children") were placed in foster care in 2015 due to concerns of substance abuse by their mother ("Natural Mother"). Natural Mother did not cause any physical abuse to Children. Natural Mother was physically abused by a partner and removed Children from that abusive situation. Following that, she gave up custody of her children for what she believed would be a short period of time.

Children were placed as foster children in the home of a male co-guardian and female co-guardian ("Co-Guardians") in 2015. Children were 3 years old and 1 year old at the time. In 2019, the probate division issued its judgment and letters of co-guardianship placing Children in the custody of Co-Guardians. This happened by agreement with Natural Mother. Natural Mother believed at that time that it was in the best interest of Children for them to be placed temporarily in guardianship.

In April 2021, Natural Mother filed a petition to terminate the co-guardianship. Co-Guardians opposed that petition. The matter proceeded to trial in August 2022. Judgment terminating the co-guardianship was entered in September 2022.

Co-Guardians had served as Children's primary caretakers since 2015. As of the date of the trial in this case, Children had been in the Co-Guardians' home for seven years. Children were 11 years old and 8 years old at the time judgment was entered in this case.

The trial court made extensive findings regarding the testimony of a clinical social worker ("Clinical Social Worker") at trial. The court found the following:

9. The Court finds [Clinical Social Worker] to be acting more in the interests of the Co-Guardians, than in the interests of the children.

10. The Court finds that [Clinical Social Worker] testified about what he "felt," "believed," and "sees," because he cannot make a diagnosis or a finding. He cannot and did not reach a conclusion to a reasonable degree of medical or psychological certainty. He did not submit a curriculum vitae. He did not submit a report.

11. The Court finds that [Clinical Social Worker's] 121 sessions with an eleven-year-old boy and an eight-year-old girl were excessive and are not in the best interests of the children when the only "progress" [Clinical Social Worker] sees is "regression."

12. The Court finds that the children are doing well in school, making friends, and are involved in extracurricular activities.

13. The Court finds that the testimony of [Clinical Social Worker] is not credible. When asked on cross-examination if he could help with the transition of the children from Co-Guardians to [Natural Mother], [Clinical Social Worker] would not answer. The Court finds that it is not in the best interest of the Children who are "great kids … doing well in school … making friends … doing extracurricular activities" to spend over 121 hours in therapy sessions with a social worker who reports seeing only regression, and offers no assistance in transitioning the children back to their natural mother.

The trial court made extensive findings regarding Co-Guardians, including:

14. The Court finds that the Co-Guardians abused their powers as guardians to deny established, meaningful visitation between the children and their natural mother. [Natural Mother] saw her children two weekends a month; then, the Respondents slashed it to 2-3 hours a month since the filing of the Petition to Terminate the Co-Guardianship and could not give good or credible reasons for this change.

15. The Court finds this change in visitation occurred after [Natural Mother] filed the Petition to Terminate the Co-Guardianship and gain custody of her children.

3

16. The Court is not persuaded that any malady the children are suffering is the result of the [Natural Mother] and her attempt to get her children back.

17. The Court finds that the children experienced no trauma while in the care of [Natural Mother]. The Court finds that the filing of the Petition to Terminate Co-Guardianship did not cause any of the alleged maladies any more than denying the natural mother meaningful visitation with her children. There was no reference to any particular conduct by the children that would show a cause for concern. For example, [the female co-guardian] stated on direct examination that she was afraid [the older child] would run away. On cross-examination it was disclosed that [the older child] did not run away or even attempt to run away from any place or person at anytime.

18. The Court finds that the testimony of the Co-Guardians is not credible concerning the children. [The male co-guardian] stated on direct examination that "it is very important for the mother to have time with her children," but he could not articulate any credible reason supporting the fact that he and his Co-Guardian now only let [Natural Mother] see her children 2-3 hours a month.

19. The Court finds that the Co-Guardians did not mention any credible significant concerns as to the fitness, ableness and willingness of the natural mother to be guardian of her own children. The evidence was unrebutted that the natural mother's current conditions are such that the Guardianship should be terminated.

20. The Court finds that the guardianship has evolved into a conflict of interest between the Co-Guardians and [Natural Mother]. The children are caught in the middle of the conflict of interest. The "Information for Co-Guardians," signed by the Co-Guardians [in 2019], specifically states: "You are under a duty, at all times, to act in the best interests of the minor and to avoid conflicts of interest which impair your ability to act." The testimony of [the male co-guardian] on cross-examination betrayed the Co-Guardians true intentions: to adopt the children. Guardianship is designed to be primarily temporary. The intent to adopt was disclosed on cross examination. Neither Guardian testified on direct examination that their true intentions were to adopt the children. [The female co-guardian] acknowledged that they have no children, and [the male co-guardian] acknowledged the desire to adopt the children.

The court found that Natural Mother "is fit, able, and willing to assume the duties of natural guardian and have her children back." It further found that Natural Mother "is in a stable marriage. She and her husband … live in a good-sized, clean home with her son" who is the five-year-old brother of Children. Pictures of the home were introduced into evidence. The court found that the "yard is large and well kept." Natural Mother's husband is a contractor who testified that his business is growing. He has "the skills to keep his home in excellent shape." Natural Mother's husband intends to adopt all three of Natural Mother's children. Natural Mother "has a stable 40-hour-per-week job with a stable company." She "can provide for her children with health insurance and other benefits through her employment." The court found that Natural Mother has successfully raised her five-year-old son without the need of a therapist or guardian.

The guardian ad litem believed Natural Mother is fit, able, and willing to be the guardian of Children. The court found that it is in Children's best interest to be reunited with Natural Mother. It found Natural Mother's testimony credible that, if therapy were needed, she would research and choose the right professional to provide therapy for the children and family. The court found that Natural Mother "most definitely is fit, able, and willing to provide the children with the care and support they need."

The court concluded that Natural Mother "has demonstrated that termination of the co-guardianship would be in the children's best interests." It terminated the co-guardianship. This appeal follows.

**Standard of Review**

5

We review a court tried case pursuant to *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *S.M.S. v. J.B.S.*, 588 S.W.3d 473, 484 (Mo. App. E.D. 2019). "Accordingly, we will affirm the trial court's decision unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *Id.*

"Substantial evidence is evidence that, if believed, has some probative force on each fact necessary to sustain the trial court's judgment." *Id.* (internal quotation marks omitted). "Evidence is considered to have probative force when it has a tendency to make a material fact more or less likely." *Id.* "When our Court reviews whether the trial court's decision is supported by substantial evidence, we view the evidence and inferences therefrom in the light most favorable to the trial court's judgment and disregard all contrary evidence and inferences." *Id.* at 484-85. "In addition, because the trial court is free to believe any, all, or none of the testimony and other evidence presented at trial, we defer to the trial court's credibility determinations." *Id.* at 485. "Ultimately, the trial court's judgment is supported by substantial evidence when the evidence and inferences favorable to the challenged proposition have probative force upon the proposition and constitute evidence from which the trier of fact can reasonably decide that the proposition is true." *Id.* (internal quotation marks omitted).

"On the other hand, a claim that the trial court's judgment is against the weight of the evidence presupposes there is sufficient evidence to support the judgment, and our Court will reverse the judgment under this standard of review only in rare cases when we

6

have a firm belief the trial court's decision is wrong." *Id*. "When our Court reviews whether the trial court's decision is against the weight of the evidence, we defer to the trial court's findings of fact when the factual issues are contested and when the facts as found by the trial court depend on credibility determinations." *Id*. (internal quotation marks omitted). "Nevertheless, when reviewing an against-the-weight-of-the-evidence challenge we can consider evidence contrary to the trial court's judgment that is not based on a credibility determination." *Id*. (internal quotation marks omitted).

> A trial court's judgment is against the weight of the evidence only if the court could not have reasonably found, from the record at trial, the existence of a fact that is necessary to sustain the judgment. When the evidence poses two reasonable, although different conclusions, we must defer to the trial court's assessment of that evidence.

*Id*. (internal quotation marks omitted).

## Guardianship

Section 475.030.4(2) provides that "[l]etters of guardianship of the person of a minor may be granted … [w]here the parents or the sole surviving parent of a minor are unwilling, unable or adjudged unfit to assume the duties of guardianship." [I]n a proceeding brought by a third party to obtain letters of guardianship for a minor child, a natural parent is initially entitled to the benefit of rebuttable presumption that the minor child's best interest is best served by being in the custody of his or her parents." *In re Est. of Moreau*, 168 S.W.3d 548, 551 (Mo. App. S.D. 2005). "When this presumption is overcome by proof that the parent is unfit, unwilling or unable to take care of the child, then appointment of a statutory guardian is necessary." *Id*.

7

"A guardianship under chapter 475, RSMo … is not a permanent severance of the relationship between a parent and a child." *In re E.R.V.A.*, 637 S.W.3d 100, 108 (Mo. App. W.D. 2021). "Instead, the granting of letters of a minor is done as a stop-gap measure to provide care and custody of a minor for the period of time when the natural guardian-parent is unable, unwilling, or unfit to perform this parental function." *Id.* (internal quotation marks omitted). "Logically, when the parent is once again able to perform his or her duties as the natural guardian, the need for the guardianship ceases to exist and is subject to being terminated." *Id.* (internal quotation marks omitted). "[A] guardianship proceeding is meaningfully different from chapter 211 actions." *Id.* A guardianship proceeding uses a preponderance of the evidence standard instead of the clear and convincing standard used in abuse and neglect and termination of parental rights cases. *Id.* at 109.

Section 475.083.2(3) provides that "[a] guardianship … may be terminated by court order after such notice as the court may require [i]f the court finds that a parent is fit, suitable and able to assume the duties of guardianship and it is in the best interest of the minor that the guardianship be terminated." "The burden of proof, by a preponderance of the evidence, is on the petitioner." *In re M.B.R.*, 404 S.W.3d 389, 393 (Mo. App. S.D. 2013).

**Point I**

In their first point on appeal, Co-Guardians argue that the court's judgment is against the weight of the evidence and that its findings are not supported by the evidence.

8

They state that the judgment makes "Multiple, Baseless Determinations and Infers Motive of Co-Guardians Without Evidentiary Support" and that it improperly shifts the burden of proof from Natural Mother to Co-Guardians.

Co-Guardians argue that several of the trial court's findings are not supported by evidence. They claim that the evidence does not support a finding that Natural Mother gave up custody of her children for what was going to be a short period of time. Natural Mother testified that when Children were in the foster care system, she was advised by her attorney "to sign over temporary guardianship" and that she did so. Co-Guardians discount the value of this testimony and instead emphasize the lack of documents in the court records to support this finding. They also focus on the time when Children were taken into foster care, which was without her consent and not a time that she gave up custody.

Co-Guardians claim that the evidence does not support a finding that Natural Mother removed Children from an abusive situation. Natural Mother testified that she "got out of an abusive relationship with my ex-husband" and that she "was out of an abusive relationship." She went on to testify about a subsequent relationship wherein one of her children was abused by her new boyfriend. However, that does not change the fact that Natural Mother testified that she removed Children from one abusive relationship.

Co-Guardians claim the evidence does not support a finding that co-guardianship was granted by the Natural Mother's agreement and that Natural Mother believed it was in Children's best interests to be placed temporarily in guardianship. They claim that the

9

only evidence that supports these findings is Natural Mother's "testimony three (3) years after the fact." They argue there is no support for these findings in the court records.

Co-Guardians also argue that Clinical Social Worker's testimony should have been deemed credible. They make several arguments about this finding by the trial court:

> 10. The Court finds that [Clinical Social Worker] testified about what he "felt," "believed," and "sees," because he cannot make a diagnosis or a finding. He cannot and did not reach a conclusion to a reasonable degree of medical or psychological certainty. He did not submit a curriculum vitae. He did not submit a report.

They state that Clinical Social Worker was not identified as an expert witness but instead testified about Children's ongoing therapeutic needs and services. They state that no party objected to Clinical Social Worker's testimony or took issue with his credentials. Co-Guardians argue that the trial court ignored Clinical Social Worker's "23 years in child welfare, 10+ years as a licensed therapist in Missouri as well as his license in Kansas and his training in child-related trauma." They assert that the trial court's finding that Clinical Social Worker was unable to diagnose or treat Children's therapeutic needs is not supported by the evidence.

Co-Guardians claim that Clinical Social Worker only used the word "believe" nine times, and he used it as an affirmative. They state that Clinical Social Worker did not testify about what he "feels" but instead testified about the feelings Children expressed during therapy. With respect to the word "sees," Co-Guardians argue Clinical Social Worker used that word when he spoke of his observations as Children's therapist.

Co-Guardians also take issue with the trial court's discussion of the 121 sessions Clinical Social Worker had with Children. They note that Children saw Clinical Social Worker separately so they did not each have 121 sessions. Instead, he saw one child 61 times and the other child 60 times over the 15 month time period. Our review shows that trial court did not find that each child had 121 sessions; instead it referenced the total 121 sessions with respect to both children. Co-Guardians acknowledge Clinical Social Worker's testimony that "60 sessions is a lot for a kid" but focus on his explanation for why he saw Children so frequently.

Co-Guardians argue that the trial court's finding that Clinical Social Worker is acting in the interests of Co-Guardians conflicts with Clinical Social Worker's testimony that his priority is Children's emotional wellbeing and that he wants Natural Mother to be involved in the therapeutic process. They argue that the trial court failed to recognize the existence of Children's trauma which Clinical Social Worker testified about in the context of regression. Co-Guardians argue that the trial court erred when it faulted Clinical Social Worker for failing to create a transition plan for Children to return to Natural Mother because he was not required by court order or statute to make such a plan.

Co-Guardians essentially argue that the trial court should have found Clinical Social Worker Credible and Natural Mother not credible. It faults the trial court for believing Natural Mother and her husband when they were not knowledgeable about Children's physical, mental, and emotional needs. They note that Children were provided

11

therapy and struggled with the relationship with Natural Mother while in foster care before the guardianship. Co-Guardians also emphasize that Children are bonded to them.

Co-Guardians take issue with the trial court's findings that the filing of the petition to terminate co-guardianship did not cause any more harm to Children than denying Natural Mother meaningful visitation with Children did. They acknowledge that Natural Mother testified that the reduction in visitation was a response to her filing the petition to end the co-guardianship. Co-Guardians state that the trial court ignored the testimony that visitation was reduced on the recommendation of Clinical Social Worker. They argue that the trial court ignored the Co-Guardians' testimony about the harm caused to Children by Natural Mother trying to take Children away from their home with Co-Guardians.

Co-Guardians argue that guardians are not required by statute to facilitate visitation between natural parents and children. They claim that they should not be faulted for reducing visits between Children and Natural Mother. They also claim the trial court erred in characterizing guardianship as a temporary arrangement. They cite all of the evidence that would support a conclusion that it is in Children's best interests to not terminate the co-guardianship. They focus on evidence that it was in Children's best interests to reduce visits with Natural Mother. They disagree with the trial court's conclusion that they had a conflict of interest with respect to their desire to adopt Children. Co-Guardians argue they are being penalized for loving Children.

12

Co-Guardians also claim the trial court's finding that Natural Mother is fit, able and willing to assume the role of guardian over Children is erroneous. They acknowledge that Natural Mother has a suitable home with her husband and that she maintains custody of her five-year-old son. The argue, however, that the trial court dismissed Children's anxiety about living with Natural Mother again. They argue that the ability to raise her five-year-old son does not mean Natural Mother is able to care for Children. They state that Natural Mother does not have a meaningful understanding of Children's medical or mental health needs. They criticize Natural Mother for not financially supporting Children during the guardianship though they cite no requirement she do so.

The guardian ad litem told the trial court that he believed Mother "has shown that she is now fit, able, and certainly willing" but also that he believes it is not in Children's best interest to terminate the guardianship. Co-Guardians argue that the trial court erred in not acknowledging and giving more weight to the best interest opinion.

As described in detail above, Co-Guardians criticize multiple findings made by the trial court. They are adamant that they presented credible, compelling evidence and that the trial court should have agreed and denied the petition to terminate the co-guardianship. Co-Guardians claim in their reply brief that Natural Mother "provided a revisionist history of events." They argue that it was undisputed that Children view Co-Guardians as their parents and have a stronger bond with Co-Guardians than they do with Natural Mother. Co-Guardians also argue that the findings must be supported by more

13

than Natural Mother's testimony. They indicate the findings must also be supported by court records from throughout the proceedings. They cite no authority for this proposition, and we find none.

"Virtually all of the evidence before the trial court was based upon witness testimony, and we defer to the trial court's witness-credibility determinations in an against-the-weight-of-the-evidence claim." *Id*. at 394. Co-Guardians' argument in support of their point "is nothing more than a series of challenges to the trial court's witness-credibility determinations, inviting us to re-evaluate the testimony through our own perspective, which is not permitted by our standard of review." *Id*. The point is denied.

**Point II**

In their second point on appeal, Co-Guardians argue that the court's judgment was an abuse of discretion because it presumed Natural Mother's fitness as a parent and shifted the burden of proof upon Co-Guardians. They claim that the court required Co-Guardians to prove Natural Mother's continued unfitness. Co-Guardians state that Natural Mother should have proven her fitness, suitability, and ability as well as that termination of the guardianship served the best interest of the children.

Co-Guardians cite the abuse of discretion standard of review and caselaw applicable to the admission of evidence. Yet, they claim that the trial court impermissibly shifted the burden of proof. Thus, their argument is that the trial court erroneously declared or applied the law.

14

"While *Murphy v. Carron* dictates this Court review the circuit court's judgment to determine if it erroneously declares the law ... [or] erroneously applies the law, … erroneous declaration or application of the law is not itself sufficient to justify reversal." *Lollar v. Lollar*, 609 S.W.3d 41, 47 (Mo. banc 2020) (internal quotation marks and citation omitted). "This Court will find reversible error only when it materially affects the merits of the action with a firm belief that the decree or judgment is wrong." *Id.* (internal quotation marks omitted). "In other words, a party must not only demonstrate error but also show prejudice." *Id.*

Co-Guardians argue that the trial court improperly shifted the burden of proof to them from Natural Mother. We disagree. Pursuant to section 475.083.2(3), Natural Mother had to prove that she is fit, suitable, and able to assume the duties of guardianship and that it is in the best interest of Children that the guardianship be terminated. The court found that Natural Mother "is fit, able and willing to assume the duties of a natural guardian and have her children back." It found that Natural Mother "has demonstrated that termination of the co-guardianship would be in the children's best interests." It found that Natural Mother "most definitely is fit, able, and willing to provide the children with the care and support they need." It recited the evidence supporting this finding, including Natural Mother's home life, employment, and care of her five-year-old child. In its conclusions of law, the trial court explicitly stated:

> To terminate the guardianship of a third party, the burden of proof is on the
> parent to prove by a preponderance of the evidence that the parent is fit,

15

suitable, and able to assume the duties of guardianship and that it is in the best interests of the minor that the guardianship be terminated.

(Citing, in part, section 475.083.2(3).)  The court stated that Natural Mother:

has met her burden of proof by a preponderance of the evidence that she is fit, suitable, and able to assume the duties of guardianship and then that it is in the best interests of the minor children that the Co-Guardianship be terminated and the children returned to their natural mother.

We find that the trial court properly stated that Natural Mother bore the burden of proof, found that Natural Mother met that burden of proof, and then identified the evidence supporting its finding.  It did not shift the burden of proof to Co-Guardians.

Co-Guardians cite paragraph 19 of the judgment's findings of fact:

The Court finds that the Co-Guardians did not mention any significant current concerns as to the fitness, ableness and willingness of the Natural mother to be guardian of her own children. *The evidence was unrebutted* that the Natural mother's current conditions are such that visitation should be increased and the Guardianship terminated.

(Emphasis added).  This does not support their argument.  The trial court found that Co-Guardians had not successfully shown that Mother's evidence offered to meet her burden of proof should not be deemed credible or dispositive.

Co-Guardians also cite paragraph 4 of the judgment's conclusions of law:

The Court recognizes that, under special or extraordinary circumstances, including significant bonding and familial custody relationship, the presumption in favor of the natural parent may be rebutted, but here, the evidence demonstrates that the presumption has not been rebutted.

The presumption that the minor child's best interest is best served by being in the custody of his or her parents only applies in the initial guardianship proceeding.  *Moreau*, 168

16

S.W.3d. at 552-53. Once it is overcome in the initial guardianship proceeding, it disappears and does not apply to a subsequent petition to terminate the guardianship. *Id*. at 552-53.

It appears that the trial court misstated the law in this paragraph. However, it did not base its decision on this presumption. It explicitly found Co-Guardians and Clinical Social Worker not credible for reasons having nothing to do with this presumption. The trial court was clear that Natural Mother was credible and that she met her burden with respect to both prongs of section 475.083.2(3) for reasons not related to this presumption. This misstatement of law was not the basis for the trial court's decision and was not prejudicial.

Co-Guardians focus again on all the evidence that would have supported a finding the guardianship should not have been terminated. They note Children's history in foster care. They state Children are bonded to them. They note the guardian ad litem's recommendation that the guardianship not be terminated. Co-Guardian's criticize the finding that they had an undesirable motive or withheld visitation as an act of retribution. Essentially, Co-Guardians reiterate their argument in Point I which we have already found to be without merit. The point is denied.

**Point III**

In their third point on appeal, Co-Guardians argue that the court erred in terminating the guardianship because it abused its discretion. They state that the

judgment misstated and misapplied the law by citing and relying on outdated cases and statutory language that lacked legal authority.

Co-Guardians cite the abuse of discretion standard of review and caselaw applicable to the admission of evidence. Yet, they claim that the trial court misstated and misapplied the law. As discussed in Point II, we review that claim for prejudice and will reverse only when the error "materially affects the merits of the action with a firm belief that the decree or judgment is wrong." *Lollar*, 609 S.W.3d at 47 (internal quotation marks omitted).

Co-Guardians complain that the trial court stated that guardianships are a "stop gap" measure. They claim that the cases and statute the trial court cited in support of this assertion make no mention of the temporary nature of a guardianship. The trial court's statement of law is correct. *See E.R.V.A.*, 637 S.W.3d at 108 ( "[T]he granting of letters of a minor is done as a stop-gap measure to provide care and custody of a minor for the period of time when the natural guardian-parent is unable, unwilling, or unfit to perform this parental function." (internal quotation marks omitted)). Co-Guardians do not show how a correct statement of law by the trial court with, perhaps, an incorrect citation were prejudicial. Instead, they recount the evidence that would have supported a finding that Natural Mother has a history of and continues to be unable to care for Children.

Co-Guardians also criticize the trial court for citing cases that were decided prior to 2001. Prior to 2001, section 475.083.2 did not require that the trial court find that termination of a guardianship was in the child's best interest. Instead, it provided that a

18

guardianship could be terminated "[i]f the guardianship or conservatorship is no longer necessary for any other reason." *In re Schnieders*, 178 S.W.3d 632, 634 (Mo. App. W.D. 2005). Co-Guardians claim that, by citing cases decided prior to 2001, that the trial court ignored the statutory requirement that termination of the guardianship be in Children's best interest. Again, Co-Guardians do not show how citing cases prior to 2001 was prejudicial. The trial court correctly stated the current legal requirements for termination of the guardianship and found that Natural Mother met her burden to prove them.

Co-Guardians claim that references to the "stop-gap" nature of guardianships is error because cases making that reference involved an appeal of the grant of guardianship instead of an appeal of the termination of guardianship. We do not agree that this is a distinction with significance.

Finally, Co-Guardians again cite evidence they believe requires a finding that termination of guardianship is not in Children's best interest. Those arguments were found to lack merit in Point I. The point is denied.

## Conclusion

The judgment is affirmed.

_____
Anthony Rex Gabbert, Judge

All concur.

19